BEFORE THE THIRD DIVISION, JUNE 4, 1965

No. 69344.—W. T. Brantman *v.* United States, protest 63/4596 (San Francisco).

DONLON, Judge: The question before us in this litigation is whether an article described as a decorative map of Venice is dutiable at 10½ percent ad valorem, as a map or chart under modified paragraph 1410, the classification of the collector's liquidation, or is entitled to free entry under paragraph 1807 as an original painting, as plaintiff's protest claims. The appraised value of the article is $296, and the protested duty in issue is $31.08.

The competing tariff provisions are as follows:

Paragraph 1410, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108):

Drawings, engravings, photographs, etchings, maps, and charts (except those containing additional text conveying historical, geographic, time-table, travel, hotel, or similar information, chiefly with respect to places or travel facilities outside the continental United States).

Paragraph 1807, as amended, insofar as relevant to the protest claim:

Original paintings in oil, mineral, water, vitreous enamel, or other colors, pastels, original mosaics, original drawings and sketches in pen, ink, pencil, or watercolors, or works of the free fine arts in any other media including applied paper and other materials, manufactured or otherwise, such as are used on collages, artists' proof etchings unbound, and engravings and woodcuts unbound, lithographs or prints made by other hand transfer processes unbound, * * *. The terms "painting", "mosaic", "drawing", "work of the free fine arts", "sketch", * * *, as used in this paragraph, shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.

The imported article is not in evidence. It was brought into court on trial in San Francisco, displayed, and removed. There are in evidence, however, three photographs, or stereo slides, of the imported article (collective exhibit 1), together with a viewer provided by plaintiff for the convenience of the court in inspecting the photographs. There is also testimony adduced for plaintiff by two witnesses.

The official papers were offered by plaintiff and received in evidence. While the entry describes the merchandise merely as "1 Case Original Painting 16#," of the value of £105.0.0, or $296, the commercial invoice describes the article as "one original Painting on vellum, by Heather Child"; and the declaration of Heather Child, annexed to customs Form 3307, Declaration for Free Entry, recites that she is the artist of "one original Painting on vellum, 'Decorative Map of Venice' " of the value of £105.

Defendant introduced no evidence and, in its brief, relies on a contention that plaintiff's evidence does not meet his burden of proof to show entitlement to paragraph 1807 classification.

The two witnesses whose testimony is before us are Mr. William T. Brantman, the plaintiff, and Mr. Barnaby Conrad who described himself as an artist, painting chiefly portraits and magazine illustrations.

Mr. Brantman is president of a wholesale housewares concern. His avocation, so he testified, is collecting art, and this he has been doing "in a minor way" (R. 3) for 8 or 10 years. His art collection consists primarily of paintings, with some small objects of sculpture and other works. What artists or works are included in his collection, he did not say. This makes it difficult to ascribe weight to his self-claim to competence to testify in the field of art.

Mr. Brantman said that he bought the article in litigation at an art gallery in London, during an exhibition of the Scribes & Illuminators of England, "an association of artists who specialize in writing." (R. 9.) Mr. Brantman defined a "scribe [as] an individual who is an expert in the art of writing" (R. 10), who also performs the function of calligraphy or "heraldic writing."

Mr. Brantman gave it as his opinion, speaking as a collector of art, that this map of Venice is a work of art.

Mr. Conrad likewise held that opinion. His experience has been chiefly in portrait painting, so he said, including the teaching of portrait painting. As is well known, portraits are representational. They are "unidealized" painting. Under questioning by plaintiff's counsel, Mr. Conrad devoted some time on the stand to an analysis of the "S" composition of the article in question; and he stated as his opinion that the calligraphy in the article enhances both the composition and the painting.

Not having the article before us, we rely for description on the testimony of record and on the photographic exhibits. It was testified that it is a water-color painting on vellum; that the central figure of the composition is a map of Venice; that this map holds together the balance of the composition and shows where to find the several paintings of various points of interest in Venice; that the handwritten matter shows where they are located; and that there are quotations about Venice from the works of poets, such as Shelley, Elizabeth Barrett Browning, and others.

This article is designated as a map. It was bought as a decorative map. Commercial designation as a map was a classification test laid down in *United States* v. *R. A. McNally*, 21 CCPA 522, T.D. 46973.

The fact that, notwithstanding designation, it may not be such a map as paragraph 1410 embraces, obviously does not signify that it is, *ipso facto*, a work of the free fine arts for which duty free entry is provided in paragraph 1807.

Plaintiff's difficulty of proof is chiefly that the claimed paragraph 1807 classification has not been established by the proofs of record. The line of distinction between works of the free fine arts, such as paragraph 1807 embraces, and other works of art embraced in paragraph 1547, does not always show clearly in the language of opinions. Yet the standards are well defined.

A landmark opinion is that of the United States Supreme Court in *United States* v. *Perry*, 146 U.S. 71. The claimed works of art were paintings on glass. The Court said:

It is insisted by the defendants that the painted glass windows in question, having been executed by artists of superior merit, specially trained for the work, should be regarded as works of art, and still exempted from duty, as "paintings," and that the provision in paragraph 122, for "stained or painted window glass and stained or painted glass windows," applies only to such articles as are the work of an artisan, the product of handicraft, and not to memorial windows which attain to the rank of works of art. Those who are familiar with the painted windows of foreign cathedrals and churches will indeed find it difficult to deny them the character of works of art; but they would nevertheless be reluctant to put them in the same category with the works of Raphael, Rembrandt,

Murillo, and other great masters of the art of painting. While they are artistic in the sense of being beautiful, and requiring a high degree of artistic merit for their production, they are ordinarily classified in foreign exhibits as among the decorative and industrial rather than among the fine arts. [P. 74.]

In *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, C.A.D. 458, our appeals court said:

* * * the phrase "works of art," used in paragraph 1547(a), *supra*, contemplates that the *original* statuary or sculptures provided for in the paragraph shall be the work of professionals. We do not entertain this view, however, because of the phraseology in paragraph 1807, *supra*. As we now view the matter, there is no reason for considering the two paragraphs *in pari materia*. While paragraph 1807 relates to art objects of the highest and finest type, it has no "works of art" phrase and such definition of sculpture as it contains is limited to the paragraph itself by express terms. [P. 32.]   [Italics quoted.]

The court, in the *Pitcairn* case, said also:

As we have indicated, Congress, in paragraph 1807 sought to protect the aesthetic taste of peoples against commercialization of that fine art which is the product of a somewhat rare and a very special genius. [P. 34.]

The record here shows that the article in issue, which plaintiff's protest claims free as a watercolor painting, is not the work of an artist recognized as such in the medium of watercolor painting. It is the work of a scribe, one who is skilled in calligraphy.

Calligraphy is defined, in Webster's New International Dictionary, second edition (1956), as "fair or elegant writing or penmanship; writing as a *decorative art*." [Emphasis added.] In Funk & Wagnalls Standard Dictionary, international edition (1963), calligraphy is defined as "beautiful penmanship" and "handwriting in general."

While it might seem doubtful whether calligraphy is a form of the free fine arts, such as are embraced in paragraph 1807, we do not now consider that problem. It is not before us. We find that a scribe, or calligrapher, is not an artist working in the medium of watercolor painting, the object before us for which artistic merit as a work of watercolor painting is claimed.

Plaintiff's brief cites *Samuel Shapiro & Co., Inc., a/c Charles Mason Remey* v. *United States*, 28 Cust. Ct. 191, C.D. 1409. In that case, there was no question but that the sculptures in issue were the work of a recognized sculptor. The issue was whether he had exercised such artistic imagination and conception in creating these sculptures as to justify classifying them as original sculptures, works of the free fine arts, under paragraph 1807. On the record before it in that case, the court held that he had done so. No new principle of law was enunciated. The facts were determinative of the decision.

Here there is no proof that the person who executed this watercolor painting is a recognized artist in that medium. Indeed, the proofs are that she is a scribe, or calligrapher.

Plaintiff's brief departs from the protest claim for classification as a painting, to argue that it is an original sketch in pen and ink, with watercolor; but fails to show that it is the work of a recognized artist working in those media.

The protest before us claims paragraph 1807 classification on the ground, as recited, that this is an original painting and, hence, it is entitled to such classification. As is well known, not all original paintings come within the purview of paragraph 1807. Only those paintings that are works of the free fine arts are paragraph 1807 paintings. To hold that paragraph 1807 embraces all original paintings, as plaintiff's protest seems to urge, would be to restrict the meaning of paragraph 1547 beyond reason. Since there is no protest claim to paragraph 1547 classification, we do not consider it.

It is well settled that the collector's classification must stand unless the importer establishes not only that such classification is incorrect, but also that the classification contended for by the plaintiff is correct. *United States* v. *Cody Manufacturing Co., Inc., et al.*, 44 CCPA 67, C.A.D. 639.

Without affirming the collector's classification, the protest claim to paragraph 1807 classification is overruled. Judgment will be entered accordingly.