(C.D. 2561)

Zacho *v.* United States

United States Customs Court, Third Division

(Decided August 4, 1965)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plantiff.
*John W. Douglas*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Plaintiff imported at Los Angeles in May 1962, a shipment of plates, or plaques, described in the invoice of the Royal Copenhagen Porcelain Manufactory, seller of the merchandise, as porcelain art underglaze decorated, true copies of signed art, Christmas plates 1962. There were 10 cases, each containing 300 identical plates, or 3,000 in total. It appears that this is half of plaintiff's aggregate purchase of 6,000 of these 1962 Christmas plates.

The collector classified the imported merchandise under paragraph 212, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade (T.D. 53865), as porcelain, decorated, not specially provided for, chargeable with duty at the rate of 45 per centum ad valorem. Plaintiff's protest claims, without specification of a claimed classification, that the merchandise is properly dutiable at 20 per centum under paragraph 1547.

Paragraph 1547(a) is a works of art provision, with three subdivisions. On trial, and in its brief, plaintiff's counsel pinpointed the protest claim as a claim that these plates are works of art, not specially provided for.

We agree that there is no special provision for these plates as works of art. The question is, are these plates, which were invoiced as "copies" of works of art, such works of art as paragraph 1547 enumerates, though not specially provided for.

The record before us consists of a sample of the imported merchandise, the 1962 Christmas plate (exhibit 1); an illustration, or photograph, of it (exhibit 2); and the testimony of Mr. Martin Jacobson, who identified himself as general manager of the firm of Zacho, the plaintiff herein. Defendant introduced no evidence.

Mr. Jacobson described plaintiff's business as importing "fine arts, and fine merchandise, from the Scandinavian countries, for distribution to dealers in the Western part of the United States." (R. 3.) His duties as "general manager are the responsibility of the firm, the financial part of it. I have to select the type of merchandise, the type of imports that we handle, and I have to supervise the selling,

and also the cooperation between our firm and the dealers that are representing our lines." (R. 3, 4.) Plaintiff sells to stores "handling finer grades of merchandise, primarily in the china and glassware line." (R. 4.)

He said that he has had "experience on an art jury," in that "on occasions at our factories in Scandinavia" he has been "consulted on various lines of artware." (R. 6, 7.) He conceded he had had no specific training for such work, but as part of his job he has to be well acquainted with the arts "within porcelainware and glassware, silverware, pewterware." (R. 7.) He had courses in arts in college and two courses after college, but he did not say what the institutions were or the nature of the *media*, if any, in which he had worked.

As to these plates, Mr. Jacobson visited the Royal Copenhagen factory in Denmark. The factory has produced a Christmas plate every year since 1908. He has seen such plates in various stages of manufacture. His description is confused as to the processes and their sequence, by which a master plate is made and a mold taken of the master plate. However, it emerges sufficiently from his testimony that a factory artist, by name of Kai Lange, created the master plate for the 1962 Christmas plate.

This plate represents the "Little Mermaid," a piece of sculpture in Copenhagen harbor and which is well known to visitors to that city.

It appears that the master plate was retained by the factory. From the mold, there were produced approximately 75,000 of the 1962 Christmas plates. When the plates come out of the mold, they are fired at low heat. Artists paint them to resemble the painting of the master plate by Kai Lange; and each of these secondary artists signs his initials on the back of the plate. The painted plates are glazed, fired a second time, and then they are sold. After the 75,000 plates were produced, the mold was destroyed.

The imported value of the plates was something less than $3 each. (R. 27.) Mr. Jacobson said the plates were sold at retail for $11. However, the price has advanced. At plaintiff's store, in February 1964, the price was $38, elsewhere, prices have increased "up to $50 to $75." (R. 17.)

In Mr. Jacobson's opinion, Mr. Lange is an artist; "only the qualified artists are assigned work in the artware department" (R. 19) of the Royal Copenhagen factory, and the 1962 Christmas plate was produced in the artware department; he considers "the persons who paint the productions of the Christmas plates * * * to be artists," there being about 25 such artists who worked on the 1962 Christmas plates. (R. 19, 20.) While he does not know all of them, he has met "many of them" and has seen their work. (R. 20.) In his opinion, the 1962 Christmas plate is a work of art.

Objection to his stating his opinion was overruled by the presiding judge, on the ground that the question is what weight is to be given to the opinion, rather than as to its admissability.

There is not before us the issue as to whether the master plate produced by Kai Lange is a work of art. Nor is there an issue as to whether these are such copies of works of art as section 1547(a) enumerates. They are not; and plaintiff does not claim that they are copies.

What plaintiff claims is that each separate plate of the lot of 75,000 plates, produced from a master mold and hand painted in the factory, is a work of art under paragraph 1547(a).

Plaintiff's argument leans heavily on our decision in *F. Lunning, Inc.*, and *Traders Service Corp. et al.* v. *United States*, 39 Cust. Ct. 271, C.D. 1941. In that case, the imported decorated porcelain vases were reproductions of original vases that had been designed by Royal Copenhagen artists; scenes were painted, in mineral colors, by artists working in the Royal Copenhagen factory who, from evidence in the incorporated record (*Royal Copenhagen Porcelain Co.* v. *United States*, 63 Treas. Dec. 1443, Abstract 23709), "had had several years training in the Royal Academy, has passed their examinations as artists, and had produced artistic work themselves." (*Lunning, supra*, at p. 279.)

There is no comparable evidence here as to the artistic training, experience, and competence of the 25 artists who finished these 1962 Christmas plates after they came from the mold.

In *Lunning*, there was testimony, as to the artistic merit of the vases, by persons of recognized standing as artists and as art authorities; *e.g.*, the curator of the Brooklyn Museum of Art, and a sculptor whose own works are exhibited in several nationally known art museums and collections. Here, the sole evidence as to artistic merit of the plates is by the general manager of the importer, whose business duties are "financial responsibility" for a business dealing in fine china and glassware, including the responsibility for selecting such wares, which the witness called "artware."

Artware is not an article enumerated in paragraph 1547. And, whatever Mr. Jacobson's skills might be in buying and selling artware, there is not such a record here as will support a finding that 75,000 plates, turned out of a master mold and hand painted by 25 different people, are such works of art as paragraph 1547(a) enumerates.

Signature is not proof of the artistic merit of a work or even that the signer is an artist. It is an aid to identification of a particular article as the work of a particular person, who may or may not be an original artist, according to the proofs adduced.

That these plates are decorative and pleasing to the eye does not, in and of itself, make them works of art. This is too well established to require the citation of authorities.

The decision in *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, C.A.D. 458, must be read in the light of the language that was there construed. The relatively inexpensive copies, replicas, and reproductions of statuary and sculptures which are works of art, are articles that Congress enumerated in paragraph 1547(a). There is no like enumeration of copies, replicas, or reproductions of porcelain plates. There is no enumeration of porcelain plates. To support classification under that paragraph, each such plate must be shown to be itself a work of art.

Paragraph 212 enumerates porcelain articles, painted. These plates are porcelain articles, painted. When the protest claim is that the plates are more particularly enumerated as works of art, plaintiff has the burden of proving that the plates are works of art within the scope of paragraph 1547(a). Plaintiff has not borne this burden. The presumption of correct classification by the collector has not been overcome.

The protest is overruled. Judgment will be entered accordingly.