(C.D. 2569)

THE KEEPNEWS CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 8, 1965)

*Barnes, Richardson & Colburn* (*Earl R. Lidstrom* and *James F. Donnelly* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise involved in this case consists of porcelain articles described on the invoices as vases, candelabra, trays, fruit bowls, centerbowls, and baskets. It originated in the Soviet-occupied zone of Germany and was exported from West Germany in October and November 1960. It was assessed with duty at 70 per centum ad valorem under paragraph 212 of the Tariff Act of 1930 as vitrified ware, not specially provided for, decorated. It is claimed in the amended protest that it is properly dutiable at 20 per centum ad valorem under paragraph 1547(a) of the Tariff Act of 1930 as works of art.

The pertinent provisions of the tariff act are as follows:

PAR. 212. China, porcelain, and other vitrified wares, . . . composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fractures, . . . including . . . vases, statues, statuettes, . . . and all other articles composed wholly or in chief value of such ware, . . . painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 70 per centum ad valorem. . . .

PAR. 1547 (a). Works of art, including . . . (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, . . . all the foregoing, not specially provided for, 20 per centum ad valorem.

Counsel for the plaintiff stated at the trial that entry number 824403 covered items numbered DS 122/1128/0/10, DS 123/1127/0/10, and DS 132/115/0/10, and it was stipulated that said articles were copies or replicas of original productions created by Max Siegel, who is a professional sculptor, and that each article was produced in the factory of Sitzendorfer Porzellan-Manufactur by persons who were not artists. Counsel stated, further, that entry 856817 covered items DT 45/8266, DT 46/8265, DT 48/11046, DT 88/7119, DT 36/6613, DT 44/8267, DT 34/2780, DT 40/9905, DT 43/922, DT 55/2108, DT 58/7548, DT 26/986, DT 49/2639, DT 169/2147, DT 52/2600, DT 162/2488a, DT 86/7120, DT 165/1196, DT 83/8063, DT 172/2822, DT 173/2836, and DT 171/468a, and it was stipulated that said articles were copies or replicas of original productions created by Reinhold Braunschmidt, who is a professional sculptor, and that each article was produced in the factory of Sachsisohe Porzellanfabrik zu Potschappel v. C. Thieme, by persons who were not artists.

Samuel Keepnews, secretary of The Keepnews Co., Inc., the plaintiff herein, testified that he was an original founder of the firm and that he did the foreign buying, and a lot of the selling, organizing, planning, and selecting of merchandise for the company. He had purchased merchandise such as that involved in this case from the firms mentioned above, one of which is located in Dresden and the other in Sitzendorf, Germany. He had visited the factories periodically since 1930 and had observed the manufacture of merchandise such as that involved herein. An article identified by him as a candlestick, manufactured by the Sitzendorfer factory, number DS 132/115/0/10, was received in evidence as plaintiff's exhibit 1. A photograph of this article and several other articles was received in evidence as plaintiff's exhibit 1–B. The witness stated that the article in the upper left-hand corner of the photograph represented items numbered DS 122 and DS 123, which merchandise had been involved in a previous protest, number 326728–K, covered by the decision in Abstract 66866.[1] It was

---

[1] *The Keepnews Co.* v. *United States*, 48 Cust. Ct. 486, Abstract 66866.

stipulated that the present items were the same and that they had the same artistic merit as those in the decided case.

Mr. Keepnews testified that he knew Max Siegel, the chief sculptor for the Sitzendorfer Porzellanfabrik and that he had seen him at work on the models for DS 122 and DS 123. However, he had not seen the original model for DS 132 and was unable to pick out any of the other items before the court and state that he had seen the original models thereof. He had observed the manufacture of articles in the Sachsisohe Porzellanfabrik and stated that the factory's entire production consisted of copies of works by sculptors. He described the method as follows:

> The method of manufacture is identical with all porcelain factories in this category. It is identically the same method as is used in modelling figures. The original sculptor makes a master mould. From that master mould, plaster impressions are taken, which are then used as working moulds. The working moulds are filled with the clay that is the underlying material involved, and when they are drawn out of the mould, they are then fired into the bisque finish. Subsequently they are glazed with a plain white glaze, and refired. After that, all decoration is put on the various pieces, and fired again one or more times until we have the finished article. [R. 17–18.]

According to the witness, there was no paint on the original sculptured model, but the modeler drew a sketch indicating the colors and the treatment he wanted put on the piece.

The following additional items were received in evidence as representative samples: Candy dish, DT 44, DT 45, DT 46 (plaintiff's exhibit 2); candle holder, DT 162 (plaintiff's exhibit 3); large dish, DT 43 (plaintiff's exhibit 4); basket bowl, DT 58 (plaintiff's exhibit 5); candle holder, DT 165 (plaintiff's exhibit 6). There were also received in evidence as plaintiff's collective exhibit 7, six photographic reproductions of articles of merchandise involved herein. The witness stated that the pictures fairly and accurately depicted the articles on the invoices.

Mr. Keepnews said he had sold items like those on the invoices for over 40 years to department stores, gift shops, china shops, furniture stores, jewelers, specialty shops, and retail establishments throughout the United States. He has seen such merchandise displayed in stores, usually in the gift or chinaware sections. He had seen them in actual use in homes many times. According to the witness, they are used for table decorations, mantel or buffet decorations, or in decorative nooks. He had seen merchandise of the candlestick type with candles in them, but almost never with the candles lit. Occasionally, the candles might be lit when only a little light was desired for atmosphere. He admitted that a candelabra could have a utilitarian purpose if bought for use as a piece for lighting, but that it could also be used purely as a decorative piece. In his opinion, whether a candelabra has a utili-

tarian use or not depends upon the nature of the article itself, its construction, quality, and content. In his experience, most candelabras are bought exclusively for their decorative value. He pointed out that the large candelabra, DT 165, would retail for $37.50 or more.

The witness testified that he had never seen the bowl-shaped articles, plaintiff's exhibits 5, 4, and 2 displayed with anything inside them. He said that such pieces were intended to be used almost exclusively for their decorative value and that they had decorations on the inside as well as the outside. It would be impossible to put anything in plaintiff's exhibit 2, he said, because it had raised flowers on the inside. He admitted that he had seen fruit in plaintiff's exhibit 4 a few times, but had never seen plaintiff's exhibit 5, which is a buffet or mantel decoration, with anything in it.

The witness stated that an article of utility was something that was bought almost exclusively to be put to a use other than a decorative one. In that sense, he said none of the exhibits has a utility use.

On the record presented, plaintiff claims that all of the articles are classifiable under paragraph 1547(a), *supra*, as works of art, on the ground that they have the degree of aesthetic appeal required by *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, C.A.D. 458, and *Ebeling & Reuss Co.* v. *United States*, 40 Cust. Ct. 387, C.D. 2009; that they are not intended for utility; and that they are produced from original productions by professional sculptors. The defendant claims, except as to items DS 122 and DS 123, that the record is insufficient to establish that the articles are works of art and not utilitarian pieces.

It has been conceded by the Government that items DS 122 and DS 123 are properly dutiable at 20 per centum ad valorem under paragraph 1547(a), *supra*, as works of art, since they are the same items as were before the court in *The Keepnews Co.* v. *United States*, *supra*. In that case, the merchandise was described as a "Dresdenware" vase with a cover, the vase elaborately decorated with gold leaf, flower paintings, and sculptured flowers and figures in pronounced relief, and the cover with sculptured flowers and leaves. It was stipulated that the vases were copies of original productions, created by the sculptor, Max Siegel of Sitzendorfer Porzellan-Manufactur; that Max Siegel was a professional sculptor and was recognized as an artist; that the vases were primarily decorative and nonutilitarian in nature; and that such merchandise was being classified by the collector under paragraph 1547 of the Tariff Act of 1930 as works of art. We pointed out that a carved marble vase, made by a sculptor as a copy of an original, had been held classifiable as a "sculpture"; that earthenware and porcelain figurines, reproductions of original sculptures made by professional sculptors, had been held classifiable under para-

graph 1547(a) as copies, replicas, or reproductions of statuary and sculpture; and that Danish porcelain vases, reproductions of original designs by artists, painted in mineral colors, had been held dutiable under said paragraph 1547(a) as works of art. *United States* v. *Baumgarten & Co.*, 2 Ct. Cust. Appls. 321, T.D. 32052; *Wm. S. Pitcairn Corp.* v. *United States, supra; F. Lunning, Inc., et al.* v. *United States*, 39 Cust. Ct. 271, C.D. 1941; *F. Lunning, Inc., et al.* v. *United States*, 42 Cust. Ct. 265, Abstract 62694, cross-appeals dismissed 46 CCPA 151. In view of the stipulated facts and the exhibit, and on the authority of the decision cited, we held that the imported vases were properly dutiable at 20 per centum ad valorem under paragraph 1547 (a) as works of art.

The other items involved in the instant case, so far as the exhibits show, are also "Dresdenware" porcelain articles, with elaborate decorations and sculptures. There are no samples or photographs of items 88/7119, and 86/7120, described as baskets on the invoice covered by entry 856817 or items 172/2822, 173/2836, and 171/468a, described as candelabras on the invoice. The candelabras exhibited have places for 2, 4, or 5 candles, are decorated with elaborate flowers and leaves, and, in three cases, have a figure of a cupid on them. Item DT 44–45–46 is a dish with raised flowers and leaves in the interior held up by three cupids. Items DT 48 and DT 40 are somewhat similar. Item DT 36, described as a basket, appears to be a porcelain footed dish, not as elaborately decorated, with a painting, but no raised flowers or leaves, in the interior. Items DT 26/986, DT 34/2780, and DT 49/2639 are somewhat similar. Item 83/8063 is a flat-bottomed dish or basket with raised flowers or leaves on the outside, but apparently no decoration inside. Items DT 52/2600 and DT 55/2108 are bowls on high stems, decorated with paintings and raised flowers and leaves and cupids.

It has been stipulated that these articles are copies or replicas of original productions of professional sculptors. According to the witness, they are designed and used as decorations and have little, if any, utilitarian purpose. The witness was not asked whether the articles were or were not works of art and gave no testimony on that point. While Mr. Keepnews said he had seen original sculptures in the factories, he was unable to pick out any of the pieces involved herein and state that he had seen the original models therefor.

It is apparently plaintiff's contention that it is sufficient if it be shown that the articles are copies or replicas of statuary or sculpture valued over $2.50 and that they are copied from original productions of professional sculptors, in view of *Wm. S. Pitcairn Corp.* v. *United States, supra; Ebeling & Reuss Co.* v. *United States, supra;* and *F. Lunning, Inc., et al.* v. *United States, supra.* It is to be noted,

however, that, in each of those cases, there was considerable testimony by expert witnesses not only that the originals were works of art conceived by professional artists, but that the imported articles themselves were works of art.

In the instant case, such testimony is lacking and we are left to determine the question from the samples and the photographs. It has been held that photographs, standing alone, are insufficient to form a basis for a finding that the articles they depict are works of art. *Marshall Field & Co.* v. *United States*, 5 Ct. Cust. Appls. 191, T.D. 34324; *United States* v. *Hensel, Bruckmann & Lorbacher*, 18 CCPA 297, T.D. 44504; *O. O. Friedlaender Co.* v. *United States*, 19 CCPA 198, T.D. 45295; *United States* v. *Mrs. Adelaide Ehrich*, 22 CCPA 1, T.D. 47019; *Henry H. Hart* v. *United States*, 64 Treas. Dec. 570, T.D. 46748.

In the *Hensel, Bruckmann & Lorbacher* case, the merchandise consisted of candelabra, reproduced from a candelabrum made by Professor Rigotti, an architect and sculptor. The court held the merchandise was not a work of art, stating (pp. 300–301):

> There is nothing in the record from which it may be determined that the original candelabrum was a work of art. The witness did not testify that they had ever seen it or any other productions of Professor Rigotti. Nor are we able to say from an inspection of a photograph of one of the involved articles that the original is an example of the free fine arts.

> The mere fact that the involved articles are ornamental and decorative, is not sufficient to make them "works of art," as those words have been judicially defined.

*Lea's* v. *United States*, 41 Cust. Ct. 4, C.D. 2012, involved majolica tiles claimed, among other things, to be free of duty as original paintings under paragraph 1807. Photographs of the tiles and of the original sketches were received in evidence. The only testimony as to their artistic merit was the opinion of a witness who did not hold himself out as an artist or as one experienced in matters of art, but relied solely on the opinions of others. The court stated that his testimony as to artistic quality had little or no probative value and held that the articles were not entitled to free entry as original paintings or other original works of art.

While the claim in the instant case is not for free entry as original statuary or sculptures, nevertheless, the plaintiff must establish that the articles are works of art in order to be classifiable under paragraph 1547(a), *supra*. On this point, the record is not sufficient, not only because of the absence of testimony but because the articles belong to a class or kind which ordinarily has utilitarian purposes and is not necessarily a work of art. A candelabra can be used to hold candles for illumination; a fruit bowl can be used to hold fruit; baskets and centerbowls can be used to hold various articles. According to the record, these items are sold to department stores, gift shops,

and other retail establishments and are usually displayed in gift or chinaware departments. It is a matter of common knowledge that both utilitarian and decorative items are purchased in such shops. On the other hand, there is no evidence that the imported articles are sold in art shops. While there is evidence that these items are used only for decorative purposes, some of the less ornate ones, such as DT 83/8063 might well have a utilitarian purpose. The question then arises as to the extent that such purpose might tend to show that the article was not a work of art.

In the course of the opinion in the *Pitcairn* case, *supra*, the court referred to the decision in *O. O. Friedlaender Co.* v. *United States, supra*, which held that certain articles were not classifiable as works of art, and noted that while the decision resulted in part from the importer's failure to establish that the originals were the work of professional sculptors, many of the articles were eliminated because of their utilitarian character. Furthermore, in describing the figures involved in the *Pitcairn* case itself, the court noted that "none of them was created for utility."

In *Abercrombie & Fitch Company* v. *United States*, 49 CCPA 129, C.A.D. 808, the court made a point of noting that there was no allegation that the goods were articles of utility, and quoted from the decision in *Ebeling & Reuss Co.* v. *United States, supra*, stating that:

> . . . Under the *Pitcairn* case, the provisions of *paragraph 1547*, as originally enacted and as amended, have been extended to include articles of common commerce, possessing beauty and not created for utility, *such as* the objects involved herein. [Italics quoted.]

On the other hand, in *Pitt & Scott* v. *United States*, 18 CCPA 326, T.D. 44584, it was held that an original painting, designed for the purpose of being reproduced in a magazine by a photographic or lithographic process, to add to the commercial value of the magazine, was an article of utility excluded from classification under paragraph 1704, Tariff Act of 1922, providing for free entry for original paintings, but was classifiable as a work of art under paragraph 1449 (the predecessor to paragraph 1547). The court stated that a painting conceived and created solely for a utilitarian purpose, and which was not designed as a means in itself of exciting the emotions, did not come within the provisions of paragraph 1704. Commenting on that statement in a concurring opinion, Judges Bland and Hatfield stated (pp. 330–331) :

> If the above should be regarded as a true statement of the law to be applied in determining the classification of paintings and works of art, the phrase "nor under paragraph 1449" should be added to the same. If an article which is conceived and created solely for utilitarian purposes, and which is not designed as a means in itself for exciting the emotions of the observer, is to be excluded from paragraph 1704 because it is solely a work of utility, it should

be excluded also from paragraph 1449 for the same reason, since, if it is solely utilitarian, it is not a work of art.

In *United States* v. *J. E. Bernard & Co., Inc.*, 33 CCPA 166, C.A.D. 331, the court sustained the collector's classification of an original painting in oil, imported for the sole purpose of being reproduced as a cover page on a magazine, under paragraph 1547(a) but overruled the claim for free entry under paragraph 1807 on the ground that the article had been imported for industrial use.

The same result was reached in *Joseph A. Paredes & Co., a/c A. Giuntoli* v. *United States*, 40 Cust. Ct. 471, Abstract 61618, concerning a marble statue, imported for "utilitarian advertising." The court held that whether or not it was an original work of art, the proof established that it was a work of art under paragraph 1547(a), and that, since that paragraph contained no exclusionary clause, it was properly classifiable thereunder.

From these cases, it appears that if an article is a work of art, its importation for a utilitarian purpose will not prevent its classification under paragraph 1547(a), *supra* However, it must first of all be a work of art, and it is obvious that especially where an article is both decorative and utilitarian, inquiry must be made as to whether it is actually a work of art or merely a highly ornamented article whether used previously for decorative purposes or as an article of utility. The fact that the article or the original thereof designed by a sculptor or artist is not conclusive, since "not everything modeled by a sculptor thereby becomes a sculpture, or a work of art, within the common meaning of the terms." *Wm. S. Pitcairn Corp.* v. *United States, supra*, page 35.

In the instant case, since there is not testimony that the imported articles are works of art and since they belong to a class or kind that have utilitarian purposes, it is clear that the articles for which no samples or photographs were produced cannot be held to be works of art under paragraph 1547(a), as the court has no way of knowing what they are As to the balance, there are some which appear to resemble closely in character the vases held to be works of art in *The Keepnews Co.* v. *United States, supra*, but there are others which are of a different type. Without some testimony by a qualified individual, the court cannot hold that they are in fact works of art, even though they are copies of productions of professional sculptors, and are used for decorative purposes.

The protest is, therefore, overruled, except as to items DS 122 and DS 123, on the invoice covered by entry 824403, which are held properly dutiable at 20 per centum ad valorem under paragraph 1547(a) of the Tariff Act of 1930 as works of art. Judgment will be entered accordingly.