(C.D. 3805)

Descoware Corp. *v.* United States

United States Customs Court, Third Division

(Decided April 28, 1969)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before Richardson, Landis, and Rosenstein, Judges

Rosenstein, Judge: At issue herein is the classification of merchandise entered as "Enamel Panels", and assessed with duty at the rate of 20 per centum ad valorem as "Works of art, * * * not specially provided for," under paragraph 1547(a), Tariff Act of 1930.

Plaintiff claims the articles are entitled to entry free of duty under paragraph 1807(a) of said Act, as amended by Public Law 86-262 (T.D. 54951), as "Original paintings in * * * vitreous enamel, * * * or works of the free fine arts * * *."

The competing tariff provisions are as follows:

Paragraph 1547(a):

> Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, and (3) etchings and engravings, all the foregoing, not specially provided for, 20 per centum ad valorem.

Paragraph 1807(a), as amended, *supra:*

> Original paintings in oil, mineral, water, vitreous enamel, or other colors, pastels, original mosaics, original drawings and sketches in pen, ink, pencil, or watercolors, or works of the free fine arts in any other media including * * *. The terms "painting", "mosaic", "drawing", "work of the free fine arts", "sketch", "sculpture", and "statuary", as used in this paragraph, shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.

At the trial, two witnesses testified for plaintiff, none for defendant. Mr. David Sanford, president of the plaintiff company, which imports enameled cast iron and steel cooking utensils, testified that he selected the items at bar from photographs of works done by the artist, whom he identified as "Hessling",[1] for someone else. The items he received did not resemble those in the photographs.

Two of the imported panels and two photographs of all the articles listed in the invoice, including three "platters", were received in evidence.

The second witness, Dr. Edward Peck, professor of art history at the University of Southern California and director of the University galleries, which house permanent art collections, described himself as a medievalist with a doctorate in art history from Harvard. He testified that the importations, which he had viewed in Mr. Sanford's office, had a vitreous glaze like the glaze on porcelain. He stated:

> * * * It is glass, really, fired. And we call them enamels when they are put on metal. Usually you have them for jewelry, or you have them in small plates, ash trays and things of that sort; on copper, but there is no reason for not having them on steel. [R. 20-21.]

In his opinion, the involved items are original works of the free fine arts which were not done mechanically. It would be difficult to

---

[1] Customs Form 3307, "Declaration for Free Entry of Works of Art, Artistic Antiquities, Original Paintings, Statuary, etc.", accompanying the entry papers, states that the articles are enamel panels produced by Bernard Hefling in Kilburn, Australia.

duplicate these compositions in the vitreous enamel medium. He was "quite sure that they are the artist's expression. * * * They are all unique." The witness had seen a mural in Cleveland done in this medium, as well as ashtrays, art objects, and jewelry. He referred to two items shown in one of the photographs in evidence as "the first table tops I have seen." Dr. Peck did not know the artist, or his signature, but opined that they were his works because he signed them. In addition, they were the result of a great deal of experimentation and showed the artist's ability to create very subtle colors, which is very difficult in this medium. All of these elements led him to believe that Hefling had made them. Dr. Peck commented—

> Oh, it is conceivable he didn't, but he signed it. They seem to be the work of one artist in style even though the designs are different and so on. There is enough of a person's unique signature, quite apart from his written signature, in the art recreation. [R. 27.]

However, he had no personal knowledge as to how the articles were made and "would like to know," although "I dare say he was following the usual enamel process". [R. 27.]

When questioned concerning his reference to some circular items as "table tops", the witness stated that they did not have to be, but he remembered discussing them with Mr. Sanford, the previous witness, who had said of them—

> Well, they could be used, you know, for either table tops or panels on a wall. They could be used for most anything because they were circular. [R. 28.]

It was incumbent upon plaintiff herein to establish that the collector erred in his presumptively correct classification and that the articles at bar are original paintings or works of the free fine arts which have no utilitarian or industrial use and were not made wholly or in part by stenciling or any other mechanical process. *Lea's* v. *United States*, 41 Cust. Ct. 4, C.D. 2012 (1958). The evidence of record falls far short of supporting plaintiff's claim for their free entry under paragraph 1807.

The test of originality of works of art in the form of paintings depends upon whether or not the weight of evidence establishes that the artist exercised such aesthetic imagination and conception as to justify his completed work being classed as an original painting; that is, whether or not the artist exercised his own imagination or conception in creating the work. *Forest Lawn Co. and H. H. Elder & Co.* v. *United States*, 41 Cust. Ct. 411, Abstract 62476 (1958) ; *Forest Lawn Memorial-Park* v. *United States*, 29 Cust. Ct. 224, C.D. 1472 (1952) ; *Samuel Shapiro & Co., Inc., a/c Charles Mason Remey* v. *United States*, 28 Cust. Ct. 191, C.D. 1409 (1952).

However, we are unable to determine what was exercised by the artist as the record establishes nothing about him other than his

name (given variously as Hesling, Hefling, Heffling and Hessling). Dr. Peck's reliance upon his signature as proof of originality is misplaced. As this court stated in *Zacho v. United States*, 55 Cust. Ct. 128, 131, C.D. 2561 (1965):

> Signature is not proof of the artistic merit of a work or even that the signer is an artist. It is an aid to identification of a particular article as the work of a particular person, who may or may not be an original artist, according to the proofs adduced.

In *United States v. Gustav Oberlaender*, 25 CCPA 24, T.D. 49037 (1937), the appellate court noted that one of the witnesses therein, who had testified that certain decorated porcelain plates were works of the free fine arts, had replied, when asked, "Do you consider any signed piece like that is as an original?", that "An artist does not generally put his signature on a piece which he does not conceive himself." The court's comment on this statement was that "The best that can be said of such testimony is that it is based on conjecture and opinion." [2]

We note, also, that exhibit 2, one of the imported panels, has the name "Hesling" on the bottom; however, exhibit 1, the other panel, after close careful scrutiny, reveals no signature, a fact apparently unnoticed by counsel for either party and Dr. Peck. Nor can we determine whether the other articles, which are shown in the photographs herein, are signed.

The fact that articles are decorative and pleasing to the eye does not, in and of itself, make them works of art. *Zacho v. United States, supra.* It must be established, in claiming classification under paragraph 1807, that they are the works of professional artists. In *Wm. S. Pitcairn Corp. v. United States*, 39 CCPA 15, 33, 34, 35, C.A.D. 458 (1951), our appellate tribunal stated—

> We first wish to be understood as being of opinion that (1) Congress clearly intended that the sculpture and statuary embraced in paragraph 1807 of the Tariff Act of 1930, *supra*, should be only those articles which are the work of professional sculptors; * * *.

> * * * * * * *

> As we have indicated, Congress, in paragraph 1807 sought to protect the aesthetic taste of peoples against commercialization of that fine art which is the product of a somewhat rare and a very special genius.

> * * * * * * *

> We fully realize that not everything modeled by a sculptor thereby becomes a sculpture, or a work of art, within the common meaning of the terms, which, in the absence of defining phraseology, is also the statutory meaning, * * *.

---

[2] 25 CCPA 30.

Even a claim for classification under paragraph 1547, which does not demand the same high aesthetic and artistic standards required for classification as a work of art under paragraph 1807 (*Wm. S. Pitcairn Corp.* v. *United States, supra*), must be supported by evidence that the original was conceived by a professional artist. *The Keepnews Co., Inc.* v. *United States*, 55 Cust. Ct. 160, C.D. 2569 (1965) (copies of statuary valued over $2.50); *H. H. Elder & Co. and Forest Lawn Co.* v. *United States*, 53 Cust. Ct. 306, Abstract 68877 (1964), reh. den. Abstract 69013 (1965) (mosaic panels).

Thus, assuming that the panels at bar are painted in vitreous enamel, plaintiff's inability to establish that they are the product of a recognized artist working in that medium is a failure of an essential element of its proof. *W. T. Brantman* v. *United States*, 54 Cust. Ct. 444, Abstract 69344 (1965). Furthermore, no one testified who actually knew how these articles were fabricated. Dr. Peck claimed that they were made in a vitreous enamel medium, but admitted having no personal knowledge thereof. Such testimony does not establish that the articles are original paintings or other original works of art, not produced by any mechanical process, within the intent of paragraph 1807. *Lea's* v. *United States, supra.*

The references in the record to some items as "platters" and to others as "table tops," and to the fact that the importer is in the business of purchasing enamel kitchenware fail to substantiate plaintiff's contention that the importations at bar are not articles of utility or for industrial use.

Furthermore, although not objected to by defendant, Dr. Peck's competency to give opinion testimony as an art expert is questionable. He obtained his doctorate in art history, specializing in medieval art, and recognized the "art form in which these works were done; but it was not shown that he studied, is familiar with or has knowledge of, any *works of art* done in this medium. His directorship of the University galleries does not qualify him as an expert in this field absent testimony as to the nature of his duties. Are they solely administrative—or does he purchase art works or assemble exhibits on loan? We are not even informed if the galleries own or exhibit art works made of vitreous enamel. The record herein fails to establish his credentials to testify as an art expert with respect to the merchandise at bar. See *Hudson-Rissman, H. H. Elder & Co.* v. *United States*, 46 Cust. Ct. 80, C.D. 2237 (1961).

Finally, we note that Customs Form 3307, which must be filed in connection with a claim for free entry under paragraph 1807 (19 CFR 10.48(b)), requires the declarant to state whether the articles described

or identified therein are "originals".[3] The declaration filed herein merely states:

The articles described or identified are, to the best of my knowledge and belief, ENAMEL PANELS and were produced by BERNARD HEFLING at KILBURN, AUSTRALIA.

For the foregoing reasons, we find that plaintiff has not overcome the presumption of correctness attaching to the collector's liquidation and to establish that the articles at bar come within the purview of paragraph 1807.

The protest is overruled and judgment will be entered accordingly.

(C.D. 3806)

---

[3] *C.F.* 3307 provides, in part, "State whether originals, or, in the case of statuary, whether originals or first or second replicas, and in the case of etchings, engravings, or wood-cuts, whether printed by hand from hand-etched or hand-engraved plates or blocks."