(C. D. 1941)

F. Lunning, Inc.
Traders Service Corp. et al.} *v.* United States

United States Customs Court, Third Division

(Decided December 5, 1957)

*Lane, Young and Fox* (*William Whynman* of counsel) for the plaintiffs.
*George Cochran Doub,* Assistant Attorney General (*William J. Vitale,* trial attorney), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: The merchandise involved in this case consists of decorated porcelain vases imported from Denmark in January and May of 1950, which were assessed with duty at 45 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the President's proclamation of May 4, 1948, T. D. 51909, as decorated chinaware, not tableware, not containing 25 per centum or more of calcined bone. It is claimed in the original protests that the merchandise is properly dutiable at 10 per centum ad valorem under paragraph 1547 (a) of the Tariff Act of 1930, as modified, as works of art, or copies, replicas, or reproductions thereof. In the amendments to the protests, it is claimed that the merchandise is properly dutiable at 20 per centum ad valorem under paragraph 1547 (a) of the Tariff Act of 1930 as works of art, not specially provided for, or at 10 per centum ad valorem under paragraph 1547 (b) of said tariff act, as modified, as paintings in mineral colors, suitable as designs for use in the manufacture of textiles, floor coverings, wallpaper, or wall coverings.

The pertinent provisions under which claim for classification is made are:

Tariff Act of 1930:

PAR. 1547. (a) Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, * * * all the foregoing, not specially provided for, 20 per centum ad valorem.

Tariff Act of 1930, as modified by the General Agreement Tariffs and Trade, T. D. 51802:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1547 (a) (1) and (3) | Works of art, not specially provided for: Paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same_____ | 10% ad val. |
| * | * * * * * | * |
| 1547 (b) | Paintings in oil, mineral, water, or other colors, pastels, and drawings and sketches in pen and ink, pencil, or water color, any of the foregoing (whether or not works of art) suitable as designs for use in the manufacture of textiles, floor coverings, wall paper, or wall coverings_____ | 10% ad val. |

At the trial, the protests were consolidated and a stipulation containing the following was received in evidence (plaintiffs' exhibit 1):

2. That the vases identified by the numbers "1484-237" and "2640-137" on the invoices covered by Entry 822701, dated May 18, 1950, involved in Protest 175913-K/3308, and the vase identified by number "1955-1217" on the invoice covered by Entry 777189, dated February 2, 1950, involved in Protest 186493-K, are the same in all material respects, including artistic merit and execution by qualified artists, as the vases identified by numbers "1385/237," "353/137" and "1484/1217" which were among the vases that were the subject of the decision in ROYAL COPENHAGEN PORCELAIN CO. v. UNITED STATES, Abstract 23709 (63 Treas. Dec. 1443) and therein held to be dutiable as works of art under Paragraph 1547 (a) of the Tariff Act of 1930, as amended; and that the record in said Abstract 23709 shall be incorporated and made a part of the record herein.

3. That the painting on each of the vases referred to in Paragraph "2" is in mineral colors.

4. That each of the other vases listed by its identifying number in Schedule A, hereto attached and involved in the above protests, is painted with the use of the same material, including artistic merit and execution by qualified artists, as all the vases which were held to be works of art in said Abstract 23709.

There were also introduced into evidence a vase designated as 1484-237 (plaintiffs' exhibit 2), a vase designated as 2640-137 (plaintiffs' exhibit 3), and a vase designated as 1955-1217 (plaintiffs' exhibit 4), and photographs of the same (plaintiffs' exhibits 2-A, 3-A, and 4-A). The vases are of the familiar Danish procelain ware, decorated

in shades of blue and white. On them are painted scenes, depicting, respectively, a sailboat, a flower, and geese flying over a landscape.

Ben Bailey, treasurer, import manager, and purchasing agent of the importing corporation, testified that the retail prices of the vases were $55, $75, and $100, respectively, and that such prices were dependent upon the excellence of the artists who originally executed the designs, the colors, the intricacy of the designs, and the quality and type of painting. The witness stated that he uses such vases and has seen them used primarily for decorative purposes and only incidentally to hold flowers.

Plaintiffs' second witness was Marvin David Schwartz, curator at the Brooklyn Museum of Art, in charge of the Department of Decorative Arts. His qualifications include a major in art at City College of the City of New York, graduate work at the Institute of Fine Arts in New York, a master's degree in American Culture from the University of Delaware, study abroad at the Sorbonne and the University of Brussels, 3 years at the Brooklyn Museum, and teaching art appreciation at City College. He examined plaintiffs' exhibits 2, 3, and 4 and stated that they were vases typical of those produced in Copenhagen today. He had seen such vases on exhibition at the Museum in Copenhagen and he thought in France. In his opinion, they belong to the class known as fine arts, as they have artistic merit and express to a certain degree the artist's feeling or emotion. He said that the fine arts are those in which the artist who is creating the object is able to put something of his own into the work. In the industrial arts, the artist produces the design, but the reproductions are produced by artisans. Such works have artistic merit to a certain degree but express the feeling or emotion of the artist to a much less degree than in the fine arts. Examples of the fine arts are sculptures, paintings, a great deal of the work in ceramics. Industrial arts include furniture, silver, textiles, floor coverings, wallpaper, and wall coverings.

The next witness was a sculptor, Harold Chester Castor, who testified as follows: He is a graduate of the University of Oklahoma, has pursued graduate studies at Columbia University, and has taught sculpture and ceramic art at Oklahoma A. & M. College and at Central High School, Oklahoma City. At present, he is head of Sculptors and Ceramic Workshop, New York City, where sculpture and ceramics are taught on a professional level and works designed and created. His works have been exhibited at the Whitney Museum, the Ceramic Natural Syracuse Show, Philadelphia Museum, Rockhill Nelson Gallery in Kansas City, the Art Center in Oklahoma City, the Art Center in Dallas, and the Museum of the City of New York. Two-thirds of the duties of the witness are concerned with the creation of objects of art in the ceramic medium. He has done work similar to plaintiffs' exhibits 2, 3, and 4, and explained the process

of making such vases. The blank vase, without any decoration or color, is fired, after which the design is painted on, generally with water and a variety of cobalt-blue colors. Then, a glaze is sprayed over the design, and the vase is fired the second time to mature the glaze over the surface.

The witness stated that he is familiar with colors and glazes and has compounded them. He recognized in the exhibits colors of mineral origin—cobalt, iron, copper, manganese, nickel. He explained that ceramics get their color from oxides of metals; that nothing else will produce color in underglazes.

Based upon his studies and the work he has done in ceramics, the witness expressed the opinion that plaintiffs' exhibits 2, 3, and 4 belong to the class known as fine arts and also to the class known as sculptures. He stated that designs, suitable for use in the manufacture of textiles, floor coverings, wallpaper, and wall coverings, could belong to the industrial arts or to the fine arts.

C. Robert Muller, the last witness called by the plaintiffs, testified that he has been in the wallpaper manufacturing business for 10 years. He has "done everything in the wallpaper business there is to do," including designing. He said that designs for wallpaper can be found practically any place and referred specifically to plaques at Cooper Union, porcelains, Chinese wall hangings, and even a brick wall. He said that, in the past 5 or 6 years, designs have been obtained from vases, cups and saucers, antique automobiles, candy jars, and clocks. In his opinion, plaintiffs' exhibits 2, 3, and 4 are suitable as designs for use in the manufacture of wallpaper. He testified that he had caused a design to be made from plaintiffs' exhibit 4, from which he could make wallpaper. The witness admitted that the design (plaintiffs' illustrative exhibit 5) was not an exact replica of the painting on the vase and said that the artist had not copied the vase but only the portion of the painting that he believed suitable for a wallpaper.

The witness also caused a design to be made, showing the three vases herein (plaintiffs' illustrative exhibit 6). The witness stated that it was a design drawn to scale, and indicated how the design was to be repeated for wallpaper. He said that the designs were good facsimiles but not exact duplicates of the paintings on the vases and that the colors were not the same. For instance, the coloring in the center of the flower was orange or red, but, on the vase, it was a deep, vivid blue. He explained that the colors on the vases could not be used in drawing a design for wallpaper, because a roller is cut for every individual color, and the shades on the vases were so similar that the block cutter would never be able to distinguish them.

There were then introduced into evidence plaintiffs' collective exhibits 7 and 7–A, which the witness said were color plates produced for the Service Porcelain Co. and were 30 to 40 years old. Each plate

contains sketches of a number of vases. The witness stated the exhibits were used by the company for showing their wares; that there was a demand for them for framing and hanging on walls; and that designers collect them in order to get ideas, motifs from them. His firm had a frieze for a border similar in design to that on the vase marked No. 1 on plaintiffs' collective exhibit 7-A.

The witness said that plaintiffs' exhibits 5 and 6 are finished designs suitable for use in the manufacture of wallpaper but that plaintiffs' collective exhibits 7 and 7-A are the initial ideas of the artists, from which sketches would have to be drawn to scale in order to become practically, actually, and commercially capable of becoming a design for use in the manufacture of wallpaper.

In their brief, plaintiffs contend that the merchandise herein is properly classifiable under paragraph 1547 (a), *supra*, as works of art. The Government has not submitted a brief but has filed a memorandum stating that "upon consideration of the record made and the brief filed by counsel for the plaintiff, this office does not desire to file a brief on behalf of the United States." Whether or not this was intended to be a concession of the case on the part of the Government, we find that there are many points which must be considered before reaching a decision.

The principal question before the court is whether these vases are properly classifiable under paragraph 1547 (a) of the Tariff Act of 1930, either as originally enacted or as modified.

It is to be noted that this paragraph refers specifically to paintings in oil or water colors, but does not mention paintings in mineral colors, whereas paragraph 1807, which provides for free entry for original paintings, includes paintings in oil, mineral, water, or other colors. This distinction has existed since the Tariff Act of 1909. See paragraphs 470 and 717, Tariff Act of 1909; paragraphs 376 and 652, Tariff Act of 1913; paragraphs 1449 and 1704, Tariff Act of 1922. In addition, the Tariff Act of 1930 provides in paragraph 1547 (b) for paintings in oil, mineral, water, or other colors, suitable as designs for the use in the manufacture of textiles, floor coverings, wallpaper, or wall coverings.

In *Wells, Fargo & Co.* v. *United States*, 8 Ct. Cust. Appls. 125, T. D. 37266, the court pointed out that there was a distinction between paintings in mineral colors and paintings in oil or water colors. It held that, under the provision in paragraph 652 of the Tariff Act of 1913 for original paintings in mineral colors, earthenware vases and plaques, having no utilitarian purpose and painted by an artist, were free of duty as such paintings.

Subsequently, under the Tariff Act of 1922, it was held, in *United States* v. *Royal Copenhagen Porcelain, Inc.*, 17 C. C. P. A. (Customs)

464, T. D. 43929, that vitrified vases, ornamental in character, the productions of professional artists, upon which original paintings had been placed by the artists themselves, were free of duty as original paintings in mineral colors. The court said that while it seemed somewhat inappropriate to regard vases as original paintings, they had to be so classified, stating (p. 469):

Adopting the reasoning in *Wells, Fargo & Co.* v. *United States, supra*, we think Congress would not have used the works "in mineral," if it had intended to exclude from the paragraph the kind of paintings upon which mineral or vitrified colors were used. If the words "in mineral" are to be given any meaning, therefore, it seems to compel the conclusion that not only plaques painted in mineral, but vases such as those at bar painted in mineral, must also be regarded for tariff purposes as original paintings in mineral and free of duty under paragraph 1704, *supra*.

In the incorporated case, *Royal Copenhagen Porcelain Co.* v. *United States*, 63 Treas. Dec. 1443, Abstract 23709, this court held that reproductions of porcelain vases, painted by artists in the employ of the Royal Copenhagen shop, were classifiable as reproductions of works of art under paragraph 1449 of the Tariff Act of 1922. The court referred to the decision in *United States* v. *Royal Copenhagen Porcelain, Inc., supra*, and stated (pp. 1446–7):

In the case at bar the testimony introduced does not establish that any of these articles, either vases or figures, are original paintings in mineral within the meaning of paragraph 1704. * * *

After inspecting the exhibits herein and carefully weighing all of the testimony introduced we are of the opinion that the articles here in controversy, which are represented by exhibits in the form of samples inspected by the court, are reproductions of original works of art; that they were produced by professional artists and sculptors; and that these reproductions are also works of art within the meaning of paragraph 1449 of the tariff act of 1922. Citing United States *v.* Perry (146 U. S. 71), and Friedlaender *v.* United States, (T. D. 43393).

The above decision was followed in this court in cases under the Tariff Act of 1930, where it was stipulated that the merchandise consisted of porcelain vases with artistic paintings executed by professional artists. *R. F. Downing & Co., Inc.* v. *United States*, 68 Treas. Dec. 998, Abstract 31790; *Royal Copenhagen Porcelain, Inc.* v. *United States*, 68 Treas. Dec. 1002, Abstract 31814.

Subsequently, in *United States* v. *Gustav Oberlaender*, 25 C. C. P. A. (Customs) 24, T. D. 49037, our court of appeals held that porcelain plates with hand-painted centers in mineral colors were properly classified as decorated porcelain articles under paragraph 212 of the Tariff Act of 1930, rather than free of duty under paragraph 1807 as original paintings or dutiable under paragraph 1547 as works of art. The court below had found that one plate which bore a signature and two which bore initials were entitled to free entry under paragraph 1807, but the reviewing court held that the importer had not sustained

the burden of establishing that they were original paintings or replicas or reproductions of the same. The remaining two articles were dinner plates having portraits in the center, one of which was said to have been copied from another painting. They had no signatures or initials of the artist and were made in a factory, belonging to the Emperor of Germany, at Meissen, Saxony. Two witnesses expressed opinions that these were works of the free fine arts. The court below found that there was no affirmative evidence to establish whether they were in fact originals or copies of other paintings and held them classifiable under paragraph 1547 (a) as works of art, not specially provided for. The court of appeals reversed, stating (p. 30):

In considering paragraph 1547, it will be noted that the Congress divided the dutiable works of art to be classified thereunder into two sections: first, "paintings in oil or water colors"; and second, "Paintings in oil, *mineral*, water or other colors." [Italics the court's.] It is true, there are other distinctions in the two subparagraphs, but this one distinction is significant, that mineral colors are specifically included in one and not in the other. Looking also at paragraph 1807, we find, "paintings in oil, *mineral*, water, or other colors." [Italics the court's.] The dutiable porcelain paragraph, paragraph 212, also includes porcelain articles "painted * * * *in any manner*." [Italics the court's.]

A consideration of these provisions leads to the conclusion that here is a proper place for the application of the doctrine *expressio unius est exclusio alterius*. Obviously the Congress did not intend to include paintings in mineral colors in paragraph 1547 (a) or it would have said so. That it had such a distinction in mind, can be ascertained by a consideration of the language of the other paragraphs quoted. The paintings upon the plates, Exhibits 2 and 3, are with mineral colors; hence these exhibits were improperly held to be classifiable under said paragraph 1547 (a).

Since that time, our court of appeals has held that earthenware and porcelain figurines, reproductions of original sculptures, were classifiable under paragraph 1547 (a) as copies, replicas, or reproductions of statuary and sculpture. *Wm. S. Pitcairn Corp.* v. *United States*, 39 C. C. P. A. (Customs) 15, C. A. D. 458. It appeared, in that case, that the original models of the figurines were made by professional sculptors; that molds were made from them; and that reproductions were made with the use of the molds and were painted by artists employed by the factory. The colors used were special ceramic colors evolved from metal bases. The court held that the phrase "works of art" in paragraph 1547 (a) contemplated that the original statuary or sculptures provided for in the paragraph should be the work of professionals, but that the copies, replicas, or reproductions coming from molds need not receive the inspection, supervision, and care of a professional sculptor in order to obtain classification under that paragraph.

According to the testimony in *Royal Copenhagen Porcelain Co.* v. *United States, supra,* the incorporated case, the vases now before us were produced in much the same way as were the figurines in the *Pitcairn* case, except that the originals there were figures of persons

and animals, whereas the originals here are vases. Vases have been held classifiable as sculptures when they had carvings thereon and when the vase form was used to support the real piece of work, but not where they were merely vases, decorated, although produced by a sculptor of note. *United States* v. *Baumgarten & Co.*, 2 Ct. Cust. Appls. 321, T. D. 32052; *Stern* v. *United States*, 3 Ct. Cust. Appls. 124, T. D. 32381; *United States* v. *Mrs. Adelaide Ehrich*, 22 C. C. P. A. (Customs) 1, T. D. 47019. It follows that the vases involved herein are not classifiable, as were the figurines in the *Pitcairn* case, under the subdivision of paragraph 1547 (a) covering statuary, sculptures, and copies, replicas, or reproductions thereof.

In view of the decision in the *Oberlaender* case, they cannot be classified under the subdivision of said paragraph 1547 (a) covering paintings in oil or water colors, or copies, replicas, or reproductions thereof.

The question remains as to whether they may be classified as "works of art" under said paragraph. This point was not considered in the *Oberlaender* case, since the record there did not establish that the plates involved were works of art. The method of producing such plates was not shown, nor did it appear that they were painted by artists, or if they were copies, that the originals were the work of professional artists. The view that they were works of art was expressed by one witness who was a collector but not himself an artist and by another witness who was in the business of restoring and appraising works of art. The court found their testimony unsatisfactory and conjectural.

In the incorporated case here, one witness, who was then director of the Brooklyn Museum of Art, testified that the vases were of conventional design and that all of the exhibits except the vases were works of art. However, in the instant case, the curator in charge of the Department of Decorative Arts of said museum, testified that such vases have artistic merit, express the artists' feeling or emotion, and belong to the class known as fine art. In addition, a professional sculptor, with experience in creating ceramic vases on the fine art level, stated that these vases belong to the class known as fine arts. It is evident from the testimony in the incorporated case that the originals of these vases were designed by artists in the Royal Copenhagen shop and that the reproductions were painted by artists who copied the original designs. Such artists had had several years' training in the Royal Academy, had passed their examinations as artists, and had produced artistic work themselves.

The opening words of paragraph 1547 (a) are "Works of art, including * * *." It has been stated that the term "including" following the words "works of art" is a term of specification and definition and not of exclusion and that the paragraph covers works of art, such as those mentioned by name, and also such as are *ejusdem generis* therewith and not otherwise provided for by the act. *Petry* v. *United*

*States*, 11 Ct. Cust. Appls. 525, T. D. 39666; *United States* v. *John Wanamaker*, 19 C. C. P. A. (Customs) 229, T. D. 45336. The vases here are like the paintings and sculptures covered by paragraph 1547 (a). In fact, they are made in the same way as the figurines which the *Pitcairn* case classified under said paragraph. There is testimony in the record that they are works of art. If the words "works of art" in paragraph 1547 (a) have any meaning apart from the types specified in the subdivisions, these vases are entitled to classification as such.

It would be anomalous to hold that the originals of vases, such as those before us, are free of duty under paragraph 1807, but that the copies, which concededly have artistic merit and were executed by qualified artists, are not works of art, but decorated chinaware. We do not think this could have been the intention of Congress. The contrary is indicated in the *Pitcairn* case, wherein it is stated (p. 34):

> As we have indicated, Congress, in paragraph 1807 sought to protect the aesthetic taste of peoples against commercialization of that fine art which is the product of a somewhat rare and a very special genius.

> There was no such motive with respect to figurines of the kind before us. Although many of them have a genuine beauty and none of them was created for utility, they were intended to be and are articles of common commerce.

> \*      \*      \*      \*      \*      \*      \*

In the decision of the court in the case of *United States* v. *Downing & Co.*, *supra* [6 Ct. Cust. Appls. 545, T. D. 36197], it was said, in substance, that the n.s.p.f. provision in paragraph 376 of the 1913 tariff act coupled with the absence of the word "original" before "sculptures" left a wide scope for the operation of the paragraph. For example, the decision stated:

> \* \* \* An article which would be a sculpture under paragraph 652 [which is similar in certain respects to paragraph 1807 of the 1930 Act] would be likewise such under paragraph 376, and, after the limited number of replicas or reproductions provided in paragraph 652 had been given free entry, further copies, replicas, or reproductions thereof would be classifiable under paragraph 376. \* \* \*

> The statement was obiter in that case, of course, but it is an interesting suggestion as to a possible construction of paragraph 1547 (a) now in force.

It was also noted in the *Pitcairn* case that, in the Tariff Act of 1930, Congress added to the provision for statuary and sculptures in paragraph 1547 (a), the words "valued at not less than $2.50," evidently feeling that there are, for tariff purposes, works of art which are of low monetary value. The articles before us, however, are sold at retail at $55, $75, and $100 apiece, the price depending on the excellence of the artist who made the design, the intricacy of the work, the quality and type of painting, and the artist executing it. They fall within the class intended by Congress to be covered by paragraph 1547 (a).

After inspecting the exhibits herein and weighing the testimony presented, and in view of the decision in the *Pitcairn* case, which was subsequent to the *Oberlaender* case, we are of opinion that these vases,

which display artistic merit and were painted by artists having a high order of skill and which are copied from original productions of professional artists and sculptors, are properly classifiable as works of art under paragraph 1547 (a) of the Tariff Act of 1930.

Since the modification of paragraph 1547 (a) does not cover all works of art, but only those enumerated, not including paintings in mineral colors or copies thereof, the vases involved herein are not entitled to the reduced rate provided by the trade agreement.

Plaintiffs' claim that this merchandise is classifiable under paragraph 1547 (b) of said tariff act, as modified, as paintings in mineral colors, suitable as designs for use in the manufacture of wallpaper, is not supported by the record. The imported vases, *per se*, are not suitable as such designs. In order to be used in the manufacture of wallpaper, a design must be drawn according to scale and colors used that can be distinguished by the block cutter who must prepare a roller for each individual color. While the vases or the paintings thereon may be used to obtain ideas or motifs for the designs, they are not themselves suitable as designs for use in the manufacture of wallpaper and are not classifiable as such under paragraph 1547 (b).

For the reasons stated, we hold that the vases involved herein are properly dutiable at 20 per centum ad valorem under paragraph 1547 (a) of the Tariff Act of 1930 as works of art. To that extent, the protests are sustained. As to all other items and in all other respects, the protests are overruled.