**MATTOON & COMPANY and T. G. Cullen Co.**

v.

**UNITED STATES.**

C.D. 3747; Protest Nos. 65/363–104492 etc.

United States Customs Court, Second Division.

March 20, 1969.

Glad & Tuttle, Los Angeles, Cal., for plaintiffs (George R. Tuttle and Robert Glenn White, Los Angeles, Cal., of counsel).

William D. Ruckelshaus, Asst. Atty. Gen., for defendant (Bernard J. Babb and Thomas Fernandes, New York City, trial attorneys).

Before RAO and FORD, Judges.

FORD, Judge:

The cases listed in schedule "A", appended hereto and made part hereof,* consolidated for the purpose of trial, involve the proper classification of certain Von Arx Air Guns and parts thereof which were assessed with duty at the rate of 15 per centum ad valorem under item 674.60, Tariff Schedules of the United States, as hand-directed or hand-controlled pneumatic tools suitable for metal-working, and parts thereof.

Plaintiffs claim said merchandise to be properly dutiable under item 674.70 of said schedules as "Other" hand-directed or hand-controlled tools, and as such subject to duty at the rate of 9 per centum ad valorem. A claim under paragraph 372, Tariff Act of 1930, contained in the protests was abandoned at the trial. Additional claims under items 678.50 and 674.42 of said tariff sched-

* See appendix.

ules were not pressed by plaintiffs and are accordingly deemed abandoned.

The pertinent portions of the statutes involved herein are as follows:

Subpart F, part 4, schedule 6, Tariff Schedules of the United States:

*Subpart F headnotes:*

1. For the purpose of this subpart—

(a) the term *"machine tool"* means any machine used for shaping or surface-working—

(i) metals (including metallic carbides);

(ii) stone, ceramics, concrete, asbestos-cement and like mineral materials, or glass in the cold; or

(iii) wood, cork, bone, hard rubber or plastics, or other hard materials,

whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it, but does not include rolling mills (item 674.20) or the hand-directed or -controlled tools provided for in items 674.60 and 674.70 of this subpart and in item 683.20 * * *; and

(b) the term *"metal-working"* includes metallic-carbide-working.

\*    \*    \*    \*    \*    \*    \*    \*

Hand-directed or -controlled tools with pneumatic or self-contained non-electric motor, and parts thereof:

674.60   Tools suitable for metal-working and parts thereof ..............................15% ad val.

674.70   Other .................................. 9% ad val.

———◆———

The record herein consists of a brochure of the manufacturer depicting Model 1B which was received in evidence as plaintiffs' exhibit 1. Plaintiffs' exhibit 2 consists of another brochure of the manufacturer depicting Models 2B, 3B and 4B. In addition to the above exhibits, the testimony of two witnesses was adduced on behalf of plaintiffs. Mr. Thomas G. Cullen, the sole owner of the importing firm, testified said firm is engaged in sales and consultations on de-rusting and de-scaling tools and on special coatings which are involved with the problems of corrosion. The merchandise was imported in four different sizes which were designated 1B, 2B, 3B and 4B. 1B is the smallest and 4B the largest. The witness had sold and demonstrated these articles to maintenance people who utilize said articles for the cleaning of surfaces prior to the application of paint coatings, to remove scaling, incrustation, paint, slag and various contaminants on concrete. Mr. Cullen described the operation of the air gun as follows:

A. Well, first of all, you have a supply of air. You take the air hose and attach it up to a handle. The tool doesn't matter which one, the principle is the same, and the air, like all

pneumatic tools, activates a piston, by a series of configurations, jets, and this causes the piston to propel, which in turn, hits an anvil, which is inserted inside of a basket or a needle holder, as we call it, and out of this needle holder you have a bunch of needles, and below, in these needles here, you have a spring. This whole body is propelled back and forth in rapid oscillation about 36 cycles a second, and these needles oscillate or play on the surface to remove any loose particles that may be present. They, each and every one has an independent throwback. In other words, it conforms to any irregularities you may have, like welds, round rivet heads, bolt heads, crevasses, irregularities in the surface.

The witness has never seen nor heard of the imported articles being used to shape metal or work metal by removing metal in the form of chips, dust or similar forms. There are other tools specifically designed to work metal in that manner.

Mr. Horace Hinds, Jr., was next called on behalf of plaintiffs, who testified he is a chemical engineer, presently employed by Foremost Dairies, Inc., but that he had been an engineering representative for plaintiff during the years 1958 and 1959. The witness was unable to identify a metallic carbide but he stated that metallic carbides are recognized as ordinarily used for cutting tools and for grinding materials. He has supervised the use of metallic carbides as cutting agents on saw blades or on lathe tools and he has used them in cutting stones for sharpening tools. The witness stated, based upon his experience, that in a test for hardness on metallic carbides, it approaches that of a diamond and that is the reason it is used for cutting tools.

The Von Arx Air Gun is used on many metals and many surfaces other than metal such as stone or concrete and is used for the removing of foreign material, oxidation, commonly called rust, barnacles, and splashes of concrete. It is used for preparing the surface of metals in the sense that it removes foreign materials from the metal surfaces. The air gun does not cut the metal or remove the metal in any case and would be inefficient for such use.

The question thus presented is whether the Von Arx Air Gun, which admittedly falls within the language of the superior heading—Hand-directed or -controlled tools with pneumatic or self-contained non-electric motor, and parts thereof—is suitable for metal-working.

The term "suitable" has been judicially determined to mean actually, practically and commercially fit for the use described. Kahlen v. United States, 2 Ct. Cust.Appls. 206, T.D. 31947; Coro, Inc. v. United States, 41 CCPA 215, C.A.D. 554. In a broad sense, the Von Arx Air Gun is "suitable" for use on metal but whether such use would bring said article within the language for "metal-working" is doubtful.

The term "metal-working" used in the Tariff Schedules of the United States was not used in the Tariff Act of 1930. Similar terminology, "for work on metal," was utilized in describing machine tools under paragraph 372, Tariff Act of 1930. The latter terminology has been judicially determined insofar as the involved merchandise is concerned. In Mattoon & Company, Inc., T. G. Cullen v. United States, 54 Cust.Ct. 282, C.D. 2545, this court held that the Von Arx Air Gun was not a machine tool as that term was limited by the proviso contained in paragraph 372, Tariff Act of 1930, as modified, and said merchandise was held to be properly subject to classification under the machines, not specially provided for, provision of said paragraph 372, as modified. The provision contained in paragraph 372, *supra*, limited the use of machine tools to work on metal. However, the court in addition to overruling the classification because the involved tool was used on other than metal, made the following observa-

tion of the term "work" as contained in United States v. Kurt Orban Co., Inc., 47 CCPA 28, C.A.D. 724:

> The word "work" is susceptible of such a wide variety of meaning that we have grave doubts Congress intended it to be construed as broadly as the Government urges. For example, in a broad sense any tool which changes the shape, size, or even the position of a piece of metal in any manner and for any purpose may be literally said to do "work" on it, even though the nature of that particular "work" be wholly incidental to the primary function of the device. Under such circumstances there is a substantial doubt in our mind that Congress intended that word to be given such a broad construction, and we think it proper to resolve that doubt in favor of the importer. United States v. Sussfeld, 1 Ct.Cust.Appls. 51, T.D. 31030; Woolworth v. United States, 1 Ct.Cust.Appls. 120, T.D. 31119; and Downing & Co. (Inc.) v. United States, 12 Ct.Cust.Appls. 451, T.D. 40614.

We therein further noted that in the Summaries of Tariff Information, 1948, volume 3, part 4, makes the following statement:

> *Scope of summary.*—Machine tools within the meaning of paragraph 372 of the tariff act include any power-driven machines that employ a tool for work on metal. By the trade, however, a distinction is made between (1) machine tools proper, consisting of power-operated metalworking machines having one or more tools and workholding devices and used for progressively removing metal in the form of chips, and (2) metalworking machines designed to shape metal by bending, pressing, and similar processes. * * *

A further review of the 1948 summary indicates that by classification of the trade and by the separate survey by the Tariff Commission there existed prior to the Tariff Schedules of the United States machines for metal-working which were not machine tools. Said summary makes the following comment:

> *Description and uses.*—This summary covers metalworking machines and parts, except machine tools. As defined by the trade, machine tools are power-operated machines having one or more tool or workholding devices and are used for progressively removing metal in the form of chips. Metalworking machines other than machine tools are power-operated machines used for shaping metals by bending, forging, punching, shearing, drawing, rolling, and similar processes. (For machine tools, as defined by the trade, see separate summaries under par. 372 on jig borers and on machine tools except jig borers.) The present summary covers all metalworking machinery as defined above and excludes machine tools. The equipment covered includes punches, shears, and bar cutters, and parts, used in fabricating structural or other rolled iron and steel shapes, which are specifically named in paragraph 372 and are dutiable at a separate rate.

Since the Tariff Classification Studies or the Explanatory Notes to the Brussels Nomenclature fail to give assistance in determinining the meaning of metalworking, we have no alternative but to consider prior decisions and the information contained in the Summary of Tariff Information of 1948. Since the latter utilized the same terminology as used in TSUS, metal-working, we can conclude the type of machine considered therein is the type of machine intended to be covered by the present TSUS. It is apparent that the type and function of the machines described, *supra,* do not remotely resemble the merchandise at bar.

We are therefore of the opinion that the involved Von Arx Air Guns are not, for tariff purposes, suitable metalwork-

ing and since they are hand-directed or -controlled tools within the superior heading, *supra,* they are properly subject to classification under item 674.70 as claimed.

Judgment will be entered accordingly.

Appendix

SCHEDULE "A"
AND
SCHEDULE OF PROTESTS

| Protest | Plaintiff | Entry |
|---|---|---|
| 65/363–104492 | Mattoon & Company T. G. Cullen Co. | 23153 |
| 65/6282–105108 | | 33718 |
| | | 35668 |
| | | 41033 |
| 65/20623–107328 | | 39973 |

Entries retained for appeal time.