(C.D. 4029)

J. E. BERNARD & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 4, 1970)

*Schwartz & Lidstrom* (*Joseph Schwartz* of counsel) ; *Barnes, Richardson & Colburn* (*Peter J. Fitch* of counsel) ; for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges; RICHARDSON and ROSENSTEIN, Judges, concurring

LANDIS, Judge: This protest involves the tariff classification of copper tubing, hard covered with tinned copper braid, imported from West Germany and entered at Chicago. Customs assessed the copper tubing at 1.275 cents per pound plus 22.5 per centum ad valorem, under TSUS (Tariff Schedules of the United States) item 613.04. Plaintiff claims that the copper tubing is properly dutiable at 5.2 cents per pound under TSUS item 613.02.

TSUS items 613.02 and 613.04 are in schedule 6, part 2, of the tariff schedules. A part 2 headnote explains that, in general:

> 1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. Unless the context requires otherwise, the provisions of this part apply to the products described by whatever process made (i.e., whether rolled, forged, extruded, cast or sintered) and whether or not such products have been subject to treatments to improve the properties or appearance of the metals or to protect them against rusting, corrosion or other deterioration. These treatments include annealing, tempering, case-hardening and similar heat-treatments or nitriding; descaling, pickling, scraping, scalping and other processes to remove oxidation scale and crust; rough coating with oil, tar, grease, red lead, or other material to prevent rusting; polishing, burnishing, glazing, artificial oxidation, phosphatizing, and other finishing treatments; metallization by cementation, by electroplating, by immersion in a bath of molten metal, or by other means; coating with enamel, paint, lacquer, or other non-metallic substances; and cladding. This part does not include—
>
>     \*     \*     \*     \*     \*     \*     \*
>
> (iv) other articles specially provided for elsewhere in the tariff schedules, or parts of articles.

Subpart C, the copper part of schedule 6, part 2, *inter alia* covers copper, its alloys and their so-called basic shapes and forms. There we find that TSUS items 613.02 and 613.04 are subheadings or classifications of copper in the so-called basic shape or form, as follows:

Pipes and tubes and blanks therefor, pipe
and tube fittings, all the foregoing of
copper:
    Pipes and tubes and blanks therefor:
        Copper, other than alloys of
        copper:

| | | |
|---|---|---|
| 613.02 | Seamless_____ | 5.2¢ per lb. |
| 613.03 | Brazed_____ | 6.2¢ per lb. |
| 613.04 | Other_____ | 1.275¢ per lb. + 22.5% ad val. |

The issue, in the context of the customs classification and plaintiff's claim is relatively simple. Is the copper tubing, covered with tinned copper braid, seamless copper tube rather than copper tube other than seamless or brazed, as classified by customs? Not satisfied to leave it at that, defendant's counsel, in open court on the date of trial ambivalently stated that:

> While the Government still contends that the original classification was correct, we do believe that if the court should find that the classification under Item 613.04 was incorrect, then we claim that the two alternative provisions, either Item 652.09 of the TSUS, or 657.30 of the TSUS, we claim as alternative classifications [R. 3.]

TSUS item 652.09, one of the miscellaneous metal products classified in TSUS schedule 6, part 3, subpart F, provides as follows:

> Flexible metal hose or tubing, whether covered
> with wire or other material, and with or without
> fittings _____   20% ad val.

TSUS item 657.30 in schedule 6, part 3, subpart G, which, according to the subpart G headnote, "covers only articles of metal which are not more specifically provided for elsewhere in the tariff schedules", provides as follows:

> Articles of copper, not coated or plated with
> precious metal:
>     Of copper, other than alloys of copper; of
>         nickel silver or of cupronickel_____1.275¢ per lb. +
>                                                22.5% ad val.

While defendant's proposed classification alternative to the customs classification and protest claim is a recognized tactic of defending the customs classification, without the possibility of obtaining an affirmative judgment for a higher rate of duty, *Hermann* v. *Jacobs, Inc.* v. *United States*, 29 CCPA 279, C.A.D. 203 (1942), *A. L. Erlanger Co., Inc.* v. *United States*, 50 Cust. Ct. 74 C.D. 2392 (1963), we believe that if seriously made an alternative classification in defense should be positioned on a firmer basis than put here by defense coun-

sel. Counsel for defendant should not treat the customs classification so lightly as to say, in effect, yes, the customs classification as copper tubes is correct, but alternatively, and as to plaintiff's claim, no, the customs classification is not correct. The court should not be burdened with issues involving every possible alternative classification a party might think of under TSUS which could, conceivably, run a great number. Alternative classifications frequently confuse the immediate and clear issue and when loosely raised, on positions less than firm, need not be decided by the court. For this case we shall accept the alternatives proposed by defendant on face value. On another occasion, if defendant continues what it has practiced here, it may not be so. Thus, in addition to the relatively simple issue posed by the customs classification and plaintiff's claim, we have had thrust upon us the issue of whether the imported copper tubing is copper pipes or tubes as customs (defendant) classified it, or flexible metal tubing, or an article of copper, not specially provided for, as defendant alternatively now contends.

Two principles, well established in customs law, bring into perspective the relative burden of proof assumed by plaintiff and defendant. Customs is presumed to have found all the facts necessary to support the classification as copper pipes and tubes, other than seamless or brazed. *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798 (1962). Whoever would challenge the customs classification must prove not only that it is wrong, but that the claimed classification is correct. *Atkins, Kroll & Co.* v. *United States*, 50 CCPA 62, C.A.D. 821 (1963).

Since the customs classification under TSUS item 613.04 is a subdivision of the superior tariff classification, copper pipes and tubes (as is also TSUS item 613.02 under which plaintiff claims), the presumption is that the imported copper tubing is dutiable under the tariff classification copper pipes and tubes. Plaintiff's burden, therefore, is to prove that the copper tube is not dutiable under the, also presumptively correct, TSUS items 613.04 subdivision "other", but correctly dutiable under the TSUS item 613.02 subdivision "seamless". Upon proof that the copper tube is seamless, the burden then shifts to defendant to prove the statement it made in open court, namely, that the copper tubing is not dutiable as copper pipes or tubes, as customs (defendant) classified it, but correctly dutiable under TSUS item 652.09, as flexible tubing, or TSUS item 657.30 as an article of copper, not coated or plated with precious metal and not specially provided for. *United States* v. *Edson Keith & Co.*, 5 Ct. Cust. Appls. 82, T.D. 34128 (1914); *Eastman Tag & Label Co.* and *Harper, Robinson & Co.* v. *United States*, 62 Cust. Ct. 237, C.D. 3735 (1969). We find that the imported copper tubing is seamless, as

plaintiff claims; that defendant has failed to establish the alternative contentions it has urged, and sustain the protest.

The record consists of testimony from one witness for plaintiff and four exhibits. Defendant introduced no evidence and government counsel was satisfied to cross-examine plaintiff's witness. Exhibit 1, a sample piece of the copper tube in the condition imported, looks like a covered piece of copper wire. The wire is hollow (the opening is 0.012 of an inch plus or minus 0.01 inch) and covered with tinned copper braid to protect the copper tube from damage. The imported copper tube is ductile and can be flexed, that is bent, with or without the tinned copper braid covering. Exhibit 2, a remote indoor-outdoor thermometer, illustrates how the braid covered copper tube is used as a part of the thermometer. The braided copper tubing is coiled in the box holding the thermometer. The installation instructions that come with the thermometer state "the thermometer contains a small metal cylinder which is sensitive to temperature and is located outdoors and * * * is connected to the indicating glass tube and scale by means of an extremely small *flexible* tube" [emphasis added]. Exhibit 3 is a piece of the copper tube *sans* the braid covering. We have test bent exhibit 3 by bending a section of it back and forth, as one might a piece of wire and the piece broke off at the bend. Exhibit 4 is a piece of alleged flexible hose.

There is no need to detail the testimony of Mr. Albert L. Stemwedel, president of Airguide Instrument Company, for whose account plaintiff entered the copper tubing. From his background and experience, which a microscopic examination confirmed, he testified that the imported copper tubing is seamless.

Defendant's counsel agrees, at least tacitly, that the copper tubing is seamless. Counsel for defense argues, however, that copper tubing with a braided tinned copper covering is much more than a seamless copper tube in a tariff sense, and is not one of the so-called basic shapes or forms of metal intended to be classified in schedule 6, part 2, subpart C. Counsel's arguments are, of course, as much a challenge to the customs (defendant's) classification under TSUS item 613.04 as they are to plaintiff's claim under TSUS item 613.02, for both of those sub-classifications are supported by the presumption that the imported copper tubing is copper tube.

Defendant's argument that the imported copper tubing is not a so-called basic shape or form of metal described in schedule 6, part 2, is based on the fact that the copper tube is covered with a tinned copper braid. That covering, says defendant, is not one of the kinds of treatment, mentioned in the schedule 6, part 2, headnote, *supra*, as not affecting the classification of products described in part 2. Those treatments include *inter alia* treatment to protect metal against rust-

ing, corrosion or other deterioration. Obviously, a copper tube which has been treated to prevent deterioration is no less a basic shape or form of metal described in part 2. And while the schedule 6, part 2 headnote specifies the kinds of treatment it includes, *inter alia*, to prevent deterioration, the word "include" is never read as a word of limitation but of extension, so that the treatments specified are fixed with certainty without necessarily excluding other treatments to prevent deterioration. *United States* v. *Kimball Dental Mfg. Co.*, 19 CCPA 353, T.D. 45501 (1932). The record before us establishes that the sole purpose of the tinned copper braid is to prevent damage, i.e. deterioration, of the copper tube.

The natural query, to counsel's contention that the copper tubing is much more than seamless copper tube in a tariff sense, because it is covered with tinned copper braid, is what is it in the tariff sense? Defendant would have us find that it is flexible metal tubing under TSUS item 652.09, or simply an article of copper, not specially provided for, under TSUS 657.30. Proof that it is flexible metal tubing in a tariff sense would be sufficient to overcome the presumption that it is copper tube. The provision for flexible metal tubing is more specific because it is more difficult to satisfy than the provision for copper tube. *Hensel* v. *United States*, 2 Ct. Cust. Appls. 221, T.D. 31951 (1911). Is the copper tubing flexible? As a matter of fact it will bend even without the braid covering. But is it flexible tubing in the tariff sense? Quite often articles which literally appear to respond to a tariff classification, are not articles classified in a tariff sense. *R. J. Saunders & Co., Inc.* v. *United States*, 49 CCPA 87, C.A.D. 801 (1962). The customs classification as copper tube carries with it the presumption that the copper tubing is not flexible copper tubing in a tariff sense.

Defendant's counsel seeks to overcome the presumption that the imported copper tube is not flexible metal tubing, on the legal principle that tariff acts are drawn in the language of commerce and that the commercial meaning and the common meaning are presumed to be the same. *C. J. Tower & Sons* v. *United States*, 41 CCPA 195, C.A.D. 550 (1954). Mr. Stemwedel's testimony, that the imported copper tubing is not generally considered to be flexible tubing in the trade, is insufficient to establish a uniform and definite commercial meaning for the tariff term "flexible tubing". *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422 (1949). The common meaning of a tariff term is a matter of law for the court to determine. *United States* v. *John B. Stetson Co.*, 21 CCPA 3, T.D. 46319 (1933).

Notwithstanding exhibit 3, the copper tube *sans* braid covering, broke under our own informal test, we do not find it necessary to determine whether the common meaning of the tariff term "flexible

tubing" refers to "anything capable of being bent, turned, or twisted *without being broken* [emphasis added] and with or without returning of itself to its former shape" (which is how Webster's Third New International Dictionary (1963), cited and relied on by defendant, defines the term "flexible"). We do not because the common meaning prevails as the sense of a tariff term only if the legislation does not manifest a contrary intention, *Armand Schwab & Co., Inc.* v. *United States*, 32 CCPA 129, C.A.D. 296 (1945). If the historical explanation of the tariff term "flexible tubing" is not altogether contrary to the cited dictionary definition, it sufficiently clouds defense counsel's reliance on that dictionary meaning for us to hold that the dictionary meaning of the term "flexible" is not enough to overcome the presumptively correct customs classification of the imported copper tubing as copper tubes.

The tariff description "flexible metal hose or tubing", TSUS item 652.09, was legislated from and is substantially the same as the tariff description in paragraph 328 of the Tariff Act of 1930. (Tariff Classification Study, Schedule 6, page 200.) Summaries of Tariff Information are a recognized source of resolving questions relating to the meaning and scope of terms which appear in various tariff acts, and in determining the intent of Congress. *Textile Printing & Finishing Co., Inc.* v. *United States*, 49 CCPA 24, C.A.D. 789 (1962); *Mattoon & Company et al.* v. *United States*, 62 Cust. Ct. 291, C.D. 3747, 297 F. Supp. 1404 (1969). In the Summary of Tariff Information 1929, Schedule 3, compiled by United States Tariff Commission for the use of the House Committee on Ways and Means, at page 702, there appears the following pertinent heading and discussion:

### FLEXIBLE METAL TUBING OR HOSE

*Description and uses.*—Flexible metal tubing is made from a continuous metal strip spirally wound and formed in a single or double groove. The edges of the strip are turned in so as to make an interlocked joint. The rubber cord fed into the tubes acts as a packing and keeps the hose tight. The flexibility is given by the elasticity of the metal and not by the sliding of one part over another. Flexible metal tubing may be of the full, square, or semi-interlocked type, packed or unpacked, armored or lined, all metal or semimetal, with welded seam or seamless. Originally the principal use was as gas tubing for stoves, heaters, and hot plates. Later the number and variety of these uses increased greatly. Some of these uses are as carburetor and exhaust tubing; conveyor hose for semisolids, hot metal products, acids, etc.; flexible arms for adjustable and portable electric lamps; flexible shafting for speedometers, taximeters, dental drills, and buffing, polishing, grinding, and drilling apparatus; air hose for automobile tire filling and vacuum cleaners. Flexible metal tubing serves for gasoline measuring pumps, spreading hot asphalt over

highways, exhaust connections for engine test hose, steam and air drills, electric-wire armoring, and blower hose. The use of flexible metal tubing for electrical conduits is an important one. [See also, Summaries of Tariff Information (1948), Vol. 3, Part 2, page 206 (same discussion).]

Defendant's footnote reference to the 1948 Summary as describing some of the flexible metal tubing or hose "without purporting to describe *all* flexible metal tubings" simply begs the question of what was intended, if it was not "flexible metal tubing * * * made from a continuous metal strip spirally wound and formed in a single or double groove", as discussed, and which customs found the imported copper tubing was not.

For defendant to iterate that if the copper tubing is not flexible metal tubing, then it is an article of copper, not specially provided for, under TSUS item 657.30, takes us over old argument that it is something more than copper tube, as classified by customs, without any proof that it is in fact something more. Short of some proof, we cannot say from examination of the exhibits, that the imported copper tubing is not copper tube. *United States* v. *Brier Manufacturing Co.*, 21 CCPA 581, T.D. 46993 (1934). We can say and do hold that it is copper tube, seamless, under TSUS item 613.02, rather than copper tube, other than seamless or brazed, under TSUS item 613.04. As heretofore indicated, defendant has failed to establish the alternative contentions it has urged.

The protest claim under TSUS item 613.02 is sustained.

Judgment will be entered accordingly.

RICHARDSON, Judge: I concur in the result.

ROSENSTEIN, Judge: I concur in the result.