The protests are overruled. Judgment will be entered accordingly.

(C.D. 4150)

W. R. ZANES & Co.
THE CROWN FLEX CORP. } v. UNITED STATES

United States Customs Court, Second Division

---

(Decided December 21, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiffs.

*L. Patrick Gray, III,* Assistant Attorney General (*Patrick Gill* and *Steven P. Florsheim,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: Plaintiffs by timely protest bring before this court for determination the question of whether a machine which cuts 19 gauge oil tempered wire to a predetermined length and loops or bends a portion of each end around a paper cord which it has pierced is a metal-working machine within the purview of item 674.35, Tariff Schedules of the United States, and as defined in the headnotes of subpart F, part 4, schedule 6 of said Tariff Schedules of the United States. The merchandise was so classified and assessed with duty at the rate of 15 per centum ad valorem.

It is the contention of plaintiffs that said machine is neither metal-working nor a machine tool as the terms are used, defined and applied in the Tariff Schedules of the United States. Plaintiffs, therefore, contend said machine is subject to duty at the rate of 10 per centum ad valorem under item 678.50, Tariff Schedules of the United States, as a machine not specially provided for.

The pertinent statutory provisions involved herein read as follows:

Machine tools:
Metal-working machine tools:

| | | |
|---|---|---|
| 674.30 | Machine tools for cutting or hobbing gears_____ | * * * |
| 674.32 | Boring, drilling, and milling machines, including vertical turret lathes _____ | * * * |
| 674.35 | Other _____ | 15% ad val. |
| 678.50 | Machines not specially provided for, and parts thereof_____ | 10% ad val. |

Subpart F headnotes:

1. For the purposes of this subpart—
    (a) the term "machine tool" means any machine used for shaping or surface-working—
        (i) metals (including metallic carbides) ;
        (ii) stone, ceramics, concrete, asbestos-cement and like mineral materials, or glass in the cold; or
        (iii) wood, cork, bone, hard rubber or plastics, or other hard materials,
    whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it, but

does not include rolling mills (item 674.20) or the hand-directed or -controlled tools provided for in items 674.60 and 674.70 of this subpart and in item 683.20 of part 5 of this schedule; and

> (b) the term "metal-working" includes metallic-carbide-working.

The record consists of the testimony of one witness called on behalf of plaintiffs and six exhibits received on their behalf.

Witness Ross, president of the actual importer, testified the imported machine produces a wire insulator pad such as exhibit 4, in four sizes, 36-inch, 51-inch, 72-inch and 73-inch widths. The end product is placed on top of springs of items such as mattresses. On top of this wire insulator pad, padding material is placed and its function is to minimize the "cupping" of the padding material.

The operation of the machine requires 19 gauge oil tempered wire which comes in coils weighing from 150 to 1000 pounds and paper cord which is twisted kraft paper in "4/32's or 5/32's in diameter." The cord is also in long lengths. The operation of the machine was described by the witness as follows (R. 17–18) :

> A. Well, there are two feed wheels which feed the wire through a guide and shutter, and the wire pierces the center cords; when the wire gets to the end, it hits a microswitch, and the feed, theoretically, stops and cuts the wire at the feed inside, and there's a looping bin which loops the wire around the end cords, on both sides; and while this is taking place the machine is indexing itself forward into the next cycle; and this keeps repeating itself.

The cord is fed in the machine at the point marked with a circle on exhibit 2 and comes out of the machine at the point marked with an arrow on exhibit 1. After the product is the length required, it hits a microswitch where knives cut the paper cords at the point marked "X" on exhibit 3.

The machine does not change the composition of the wire and is capable of use only with 19 gauge wire and the paper cord. It is apparent from the record that the involved machine can produce only one product, a wire insulator pad, which is made from 19 gauge oil tempered wire and paper cord. The machine cuts both the wire and cord and bends the ends of the wire around the end cord while it causes the wire to pierce the other cords. The machine therefore operates with two materials, wire and cord. In *Western Wire Works, Inc.* v. *United States*, 64 Cust. Ct. 288, C.D. 3992 (1970), appeal pending, the court in determining the classification of a perforating press observed that the distinction between metal-working machine tools and other machine tools provisions is not the manner of operation but the material upon which said machine operates.

Subpart F headnotes divide the materials into three categories as indicated, *supra.* Category (i) covers metal which obviously includes the wire utilized by the involved machine. The other two categories do not by any stretch of imagination cover paper cord. A machine which, for the sake of argument, shapes or changes the shape or form of metal and also utilizes a material in its operation which is not included in the headnotes, *supra,* does not fall within the purview of a machine tool. To do so would, in our opinion, not be in accordance with the intent of Congress as spelled out by the headnotes. While the provision for machine tools has been expanded under the Tariff Schedules of the United States to include materials other than metal, it does not go so far as to include such machines which utilize materials other than those specifically and generally set forth in the headnotes. Under such circumstances, the reasoning heretofore applied to machine tools under the Tariff Act of 1930 is applicable herein. *Mattoon & Company, T. G. Cullen Co.* v. *United States,* 62 Cust. Ct. 291, C.D. 3747, 297 F. Supp. 1404 (1969). The imported machine is not a metal-working machine tool for tariff purposes.

The cases cited by the parties do not control the question as determined herein. However, since defendant strongly opposes the principle that metal-working machine tools may only work on metal on the theory that the essential or primary function is the work on the wire, and the work on the paper cord is merely incidental under the principles enumerated in *Davies, Turner & Co.* v. *United States,* 9 Cust. Ct. 242, C.D. 701 (1942), we deem it necessary to make specific comment on this theory. We are of the opinion that in the production of the wire insulator pad both the wire and the paper cord fabrication are equally essential. The work performed on the paper cord is not incidental as contended by defendant. Without both materials, the end product composed of two materials could not be produced.

The claim of plaintiffs for classification under item 678.50, Tariff Schedules of the United States, as machines not specially provided for and parts thereof is sustained.

Judgment will be entered accordingly.