(C.D. 4364)

T. G. Cullen Co., Inc. } 
Mattoon & Co. } *v.* United States

---

United States Customs Court, Third Division

(Decided July 5, 1972)

*Glad & Tuttle* (*Hudson F. Edwards* of counsel) for the plaintiffs.
*Harlington Wood, Jr.*, Acting Assistant Attorney General (*Gilbert Lee Sandler* and *Peter Jay Baskin*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge

LANDIS, Judge: This case involves the classification for duty purposes of merchandise manufactured in Switzerland and invoiced as "240 Kgs. [kilograms] 3 mm Needles".

Customs classified the merchandise under item 649.47 of the Tariff Schedules of the United States (TSUS) as interchangeable tools for hand tools, dutiable at 22.5 per centum ad valorem.

Plaintiffs claim that the merchandise is properly classifiable as parts of hand-directed or -controlled tools with pneumatic or self-contained non-electric motors, dutiable under TSUS item 674.70 at 9 per centum ad valorem.[1]

---

[1] Plaintiffs abandoned alternative protest claims under TSUS items 674.60, 674.42 and 678.50.

10

The pertinent provisions of the tariff schedules are as follows:

SCHEDULE 6. – METALS AND METAL PRODUCTS
PART 3. – METAL PRODUCTS

SUBPART E. – TOOLS, CUTLERY, FORKS
AND SPOONS

Subpart E headnotes:

\*     \*     \*     \*     \*     \*     \*

3. The provisions for "interchangeable tools for hand tools or for machine tools" cover interchangeable tools which are designed to be fitted to hand tools or machine tools and which cannot be used independently, and include, but are not limited to, interchangeable tools for pressing, stamping, drilling, tapping, threading, boring, broaching, milling, cutting, dressing, mortising or screw-driving, but do not include saw blades, knives, or cutting blades, and do not include holding or operating devices even if attached to such interchangeable tools.

\*     \*     \*     \*     \*     \*     \*

Interchangeable tools for hand tools or for machine tools, including dies for wire drawing, extrusion dies for metal, and rock drilling bits:

\*     \*     \*     \*     \*     \*     \*

Other:
| | | |
|---|---|---|
| 649.45 | Suitable for cutting metal_____ | \* \* \* |
| | Not suitable for cutting metal: | |
| 649.47 | For hand tools_____ | 22.5% ad val. |

\*     \*     \*     \*     \*     \*     \*

PART 4. – MACHINERY AND MECHANICAL
EQUIPMENT

Part 4 headnotes:

1. This part does not cover—

\*     \*     \*     \*     \*     \*     \*

(v) articles and parts of articles specifically provided for elsewhere in the schedules

\*     \*     \*     \*     \*     \*     \*

SUBPART F. – MACHINES FOR WORKING
METAL, STONE, AND
OTHER MATERIALS

\*     \*     \*     \*     \*     \*     \*

Hand-directed or -controlled tools with pneumatic or self-contained nonelectric motor, and parts thereof:

| | | |
|---|---|---|
| 674.60 | Tools suitable for metal-working and parts thereof_____ | * * * |
| 674.70 | Other _____ | 9% ad val. |

The official papers are in evidence. Exhibit 1 is an assembled Von Arx air gun, model 1–B, in which the imported needles are used. The components of the Von Arx air gun, *inter alia*, include a gun component, a tool holder component (the holder, exhibit A, resembles the cylinder of a gun in a revolver), designed to hold the needles in the holes or chambers of the holder, and a component of needles, identical with those imported illustrated by exhibit 2. The Von Arx air gun, a tool used to remove old paint and scale from surfaces which are to be repainted, is concededly a hand-directed or -controlled tool with a pneumatic or self-contained non-electric motor, dutiable under TSUS item 674.70, *Mattoon & Company et al.* v. *United States*, 62 Cust. Ct. 291, C.D. 3747, 297 F. Supp. 1404 (1969). The overriding issue in this case is whether the so-called needles, imported in bulk for use in the Von Arx air gun, are dutiable under TSUS item 674.70 as parts of the Von Arx air gun, or under TSUS item 649.47 as interchangeable tools for hand tools. Upon the record herein made and reviewed, we hold that the evidence is insufficient to overcome the presumption of correctness attaching to the customs classification of the needles as interchangeable tools for hand tools, dutiable under TSUS item 649.47, *Dollar Trading Corp.* v. *United States*, 67 Cust. Ct. 308, C.D. 4290 (1971, appeal pending), and overrule the protest.

Exhibit 2, illustrative of the imported needles, is a slender elongated article (the shape of a nail), seven inches long, with a slightly oversized head as not to pass completely through the chamber of the tool holder, and a working end beveled on two sides to a straight edge that measures approximately two-sixteenths of an inch.

Mr. Thomas G. Cullen, president of T. G. Cullen, Inc., importers of tools for derusting, descaling, and removing old paint surfaces, testified for plaintiffs. He stated that the Von Arx air gun is manufactured in various models; that tool holders, designed to hold 4 mm., 3 mm., and 2 mm.[2] size needles are made for each model; that a tool holder will not hold mixed sizes of needles, but that the three sizes of needles can be used in all models of the Von Arx air gun by using the appropriate size tool holder. Mr. Cullen further testified that the Von Arx gun cannot function to remove paint without the needles, and that the Von Arx needles cannot be used in any other type of air gun for similar

---

[2] Defendant's exhibit A is a 2 mm. tool holder with a set of 2 mm. needles.

work because other air guns use needles of a different size and configuration.

In his description of how the Von Arx gun operates, Mr. Cullen stated that the gun oscillates the needles back and forth and, in conformity with the surface being worked, the needles will work a quarter of an inch in any direction to a depth of one inch on a surface groove. The working part of the gun tool is the needle that comes in contact with the surface. The tool holders are designed to hold more than one needle (the tool holder for exhibit 1 is established to hold 12 needles) and while the air gun would work with less than the full complement of needles the tool holder is designed to hold, it would not do the work as efficiently. When asked if the needles ever wear out or break and how they are replaced, Mr. Cullen stated:

> Well, if, in the beginning, these are—Well, like all tools, they wear out. If a needle should break for some reason—Well, if quality control lets some needles get through that are too hard or have some other defect, which does happen once in a great while, or if the needles have not been in use for a great period and they haven't been worn down very much, then you could replace a needle, or two needles, or whatever is necessary. But if your needles have been worn down, say half an inch, or even a quarter inch, why, you would replace the whole cell. It would be like walking on one short stilt and one long one.

The official papers indicate that the needles were imported in bulk. Mr. Cullen testified that after importation, the needles are assembled into sets and sold in sets. They are never sold individually. There are, according to Mr. Cullen, at least three chisel-type scraping tools and chisel holders designed for use in the Von Arx air gun, and which, interchangeably with the needles, fit in the gun. The Von Arx gun is sold either as a complete tool in a kit that includes the needles and chisels, or the components can be purchased separately.

Plaintiffs basically argue that the above facts establish that the 3 mm. needles are not "individually" tools, but merely parts [3] of the tool, namely, the Von Arx air gun. It is plaintiffs' position that, if we think about it, the "tool" is the unit or set into which the needles are assembled after importation for sale as a set.[4] Tariff acts classify merchandise in the language of commerce, and in the absence of evidence to the contrary, the commercial meaning is presumed to be the same as the common meaning. *United States* v. *Tropical Craft Corp.*, etc., 42

---

[3] TSUS General Headnotes and Rules of Interpretation provide that:
10(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.
[4] TSUS, schedule 6, part 3, subpart E, wherein the imported needles were classified under TSUS item 649.47, contains a provision for "sets", as follows:
651.75 Sets (except sets specially provided for) which include two or more of the tools, knives, forks, spoons, or other articles provided for in different rate provisions of this subpart * * * The rate of duty applicable to that article in the set subject to the highest rate of duty.

CCPA 223, C.A.D. 598 (1955). There is no evidence of and plaintiffs do not argue that the term "tool" has a commercial meaning different from the common meaning. The schedule 6, part 3, subpart E headnote, states what the provision for "interchangeable tools" is intended to cover and include, but does not define the term "tool". Plaintiffs cite no authority, legal or otherwise, that comes near supporting their argument that the "tool" in this case is the set of needles and not the individual needle. The fact that the needles were imported in bulk does not relevantly establish that they are not, individually, a "tool", *cf. United States v. Eimer & Amend*, 28 CCPA 10, C.A.D. 117 (1940) (the word "article" in the tariff sense of chemical articles and scientific articles held to include glass wool imported in bulk form). Corpus Juris indicates the term "tools" has been given broad signification but is difficult to define, 35 C.J.S. *Exemptions*, § 46. The statutory term "interchangeable tools" is tied to tools which are designed to be fitted to hand or machine tools and which cannot be used independently. The kinds of tools so designed and used are given broad and virtually unlimited signification. Accordingly, we are of the opinion that, in the tariff sense of the term "interchangeable tools", the term "tool" has the same broad signification as the synonymous term "instruments" meaning any implement or tool by which work is done. *United States v. Bliss & Co. et al.*, 6 Ct. Cust. Appls. 433, 440, T.D. 35980 (1915) ; *Audel's New Mechanical Dictionary* (1960). We have no reason to doubt that the imported articles are chiefly used with the Von Arx air gun and are parts in the tariff sense.[5] This is not helpful to plaintiffs, however, since the fact that the needles are parts does not overcome the presumption of correctness attaching to the customs classification of the needles as "interchangeable tools" in the broad signification of that term. The record establishes that the needles are designed to be fitted to the air gun and cannot be used independently. The fact that the air gun will do its work more efficiently when the tool holder is fully loaded with a set of needles does not derogate from the fact that the "working portion", as Mr. Cullen testified, "is the needle, which is the part that * * * come[s] in contact with the surface * * *."

Neither the Brussels Nomenclature (heading 82.05) nor the TSUS headnote on "interchangeable tools", cited by plaintiffs, supports their contention that Congress intended to limit the classification of "interchangeable tools" to those which surface work or shape materials. The provision for "interchangeable tools" is clearly stated to include by definition tools which surface work or shape materials, but is "not limited to" that class, *F. Lunning, Inc., et al. v. United States*, 39 Cust. Ct. 271, 279, C.D. 1941 (1957) (the word "including" is a term of specification and not of exclusion).

---

[5] n. 3.

14

Plaintiffs, we note do not contend or argue that the provision for "interchangeable tools" is not a specific provision for tools that might otherwise be governed by a "parts" provision in TSUS. We doubt that they could seriously so contend. Part 4 of schedule 6, the part where plaintiffs' claimed item 674.70 is classified, states in a headnote that part 4 does not include parts of articles specifically provided for elsewhere in the schedules. The TSUS general headnote definition of "parts" states that a provision for parts does not prevail over a specific provision for such part. The relevant TSUS history, discussing the proposed provisions in schedule 6, part 4, with respect to parts of machinery indicates that the provision for "interchangeable tools" is intended to be a specific provision for the more frequently used tool parts as follows:

> The proposed provisions with respect to parts of machinery are uniform in principle and are more complete and realistic. Specific provisions have been included for a number of the more frequently used components of machinery. For example, there are specific provisions in part 3 for all screws, nuts, bolts, springs, saw blades, *interchangeable tools for machine tools*, and chains used for the transmission of power * * *. [Tariff Classification Study, Schedule 6, page 257, emphasis added.]

The protest is overruled. Judgment will be entered accordingly.